## B. S. GREEN v. CHANDLER AND WIFE.

In a contract for the sale of land evidenced by a bond from the vendor, to make to the purchaser a good and sufficient title, and the purchaser seeks to rescind the contract because of the inability of the former to make a valid title, the vendor impliedly affirms by the bond that he has a good title ; and if he seeks to excuse himself for a non-compliance in making the title, and yet hold the purchaser bound to adhere to the contract, the burthen is upon him to allege and prove that the latter purchased with a knowledge of the defectiveness of the title, or with a risk as to his getting a better title.

If, while the contract is thus executory, the purchaser discovers the want of title in the vendor, of which he had had no notice at the time of making the contract, he has the right *prima facie,* to renounce the contract at once.

Where one party fails in performing the contract, the other, if he means to rescind it, should give a clear notice of his intention ; and if he fails to give such notice by some act indicating his intention, in a reasonable time after he is apprised of the defect, he may often be deemed to have waived his right to abandon the contract, if afterwards the vendor should be able to make a title.

In such contract, the purchaser relying upon the affirmation of title in the vendor, as well as the promise to make title, having been put in possession of the land, and before the time arrives for the payment of the money and the execution of the title, on being apprized of the want of title in the vendor, may reinvestigate the diminished security, on the faith of which he has already paid a part of the purchase money, made improvements, and give notice of his dissatisfaction and intended repudiation of the contract. And if the vendor should afterwards cure the defect, and seek to enforce the contract specifically, it would be incumbent on him, within a reasonable time, to show that he had cured the defect, or given ample assurance of security, or such other facts as would make it clearly equitable and just to decree a specific performance.

It would not be incumbent on the purchaser to disprove such facts in the first instance, to entitle him to rescind ; the failure of title, notice and intended repudiation being shown, the burthen rests upon the vendor to show the facts which would in equity entitle him to enforce the contract.

The rules of equity are very different in a case of actual fraud ; and will not relieve against a rescission of the contract, if the vendor being aware of the defect of right to sell, falsely and fraudulently represented that he had a good title, with intent to deceive the purchaser, and thereby did so.

Green v. Chandler.

The purchaser, upon discovering the fraud, might at once give notice of his repudiation either directly or by some act clearly manifesting it, and abandon the premises, and resort to any legal means to be restored to his rights or recover his damages. That the vendor after such abandonment cured the defect in his right, or that a third party, the real owner of the land, offered to make a good title upon the payment of the money by the purchaser, will not defeat the right of the latter to rescind the contract.

See this case for facts that rendered it inequitable to adjudge the costs of the suit against the defendant.

ERROR from Walker. Tried below before the Hon. Peter W. Gray.

On the 29th day of May, 1853, James Chandler brought this suit against B. S. Green, S. B. Green and T. G. Green, as the joint and several makers of a promissory note payable to him for the sum of $5,362, dated June 29th, 1857, and due the 1st of January, 1861. An attachment was prayed for against the defendants, which was issued, and on the day of filing the petition, was executed by the seizure of four slaves of the defendants, which they afterwards replevied.

The defendant, B. S. Green, in June 1858, obtained an injunction restraining the plaintiff from transferring the note, and the district judge granting the writ ordered the petition for injunction to be filed as an answer to the plaintiff's suit. The defence set up by the answer was, that the note was given for the balance of the purchase money for 1513 acres of land which B. S. Green purchased from the plaintiff and his wife Susan A. Chandler; that he had paid $690, and had taken their bond in the penal sum of $12,000, conditioned as follows :

" Now if the said B. S. Green shall pay, or cause to be paid, the following described note, (setting it forth,) on or before the first day of January, 1861, in that case we bind ourselves, our heirs, administrators, executors and assigns, to make or cause to be made unto B. S. Green or his heirs, administrators, executors and assigns, a good and sufficient title to the aforesaid described tract or parcel of land ; otherwise to remain null and void and of no effect in law." Dated June 29th, 1857.

There was attached to the bond no certificate of the acknowledg-

ment and private examination of the wife as to the execution of the bond. The said answer alleged, that at the time of making the contract of sale, the plaintiff and wife pretended to hold a valid title bond to the land from James M. Watson and Virginia Watson, his wife, but failed to produce it for inspection, upon the pretence that it had been left in Watson's custody for safe keeping ; that the plaintiff, in the presence of, and with the assent of his wife, represented that there was no outstanding title, or claim of title to the land in any one else than themselves, and those whose title bond they held ; that the defendant entered into the contract upon the faith of these representations ; paid $690, as before stated, took possession, and made valuable and permanent improvements on the land, worth $2,500.

That afterwards he discovered these representations in regard to the condition of the title were false and fraudulently made ; the truth being, as the plaintiff and his wife (who was also made a party by the prayer of the petition for injunction,) well knew, that at the time of the contract of sale, E. W. Cawthon, Thomas F. Bailey, and others, claimed title to the land, and have since caused suit to be instituted to recover possession of the same, which is yet pending and undetermined.

Also, that if the claimants in that suit are not entitled, still the title was and is in George Watson, a minor. That the bond from J. M. Watson and wife to the plaintiff was not executed in the mode prescribed by law to bind the wife, who now claims the land as her separate property ; that the plaintiff and his wife have paid no part of the purchase money on the contract of sale, on which the last named bond was executed, nor are they able to pay the purchase money, without which they cannot get a title. That said bond has never been recorded, nor will they allow defendant to inspect it, although an inspection has been demanded, but fraudulently conceal and withhold the same from public and private scrutiny.

That upon the discovery of the fraud, and the difficulties and litigation surrounding the title, he gave notice to the plaintiffs of his intention to rescind the contract, and abandon the possession of the land, and proposed to give up his claim for the purchase

money paid, and restore the land, free of charge, to the plaintiffs upon the delivery of the note sued on, to said defendant; which proposition the said Chandler refused to accede to, and threatened to stop the defendant by a suit if he should attempt to abandon the possession, and has accordingly instituted this suit.

That he is poor and unable to incur the expense of protracted litigation concerning the land; that it would be a great, and perhaps, irreparable injury to him to be compelled to still further improve the land, and finally have to surrender the improvements and pay rent to the owner of a superior outstanding title. That six or seven negro slaves compose almost the entire property owned or claimed by the said Chandler and wife; and that the most, if not all of whom, are owned or claimed by the wife as her separate property. That it is doubtful whether the bond for title held by him will bind the separate property of the wife, and should it do so, whether the property is of sufficient value to reimburse him for his damages in case of eviction by a superior outstanding title. That the adverse claims constitute such a cloud upon the title to the land, as to destroy its marketable value. Therefore, he has elected to consider the contract of sale at an end, and to abandon the possession of the land, which he has accordingly done; and the defendant prayed for a rescission of the contract, a judgment against said Chandler and wife for the purchase money paid as aforesaid with interest, and for the value of the improvements by him made on the land.

The plaintiffs, by their replication, admitted that the note was executed for the consideration stated by the defendant, and. that they had received the said amount of $690, and executed the bond as stated. They denied the allegations of fraud and misrepresentation; denied the charge of their inability to respond in damages in case of the eviction of the defendant; and alleged that if there was any defect in the title, it was known to the defendant before the purchase by him. They further averred that the bond from Watson and wife (dated May 14, 1857,) to James Chandler, was executed in accordance with the statutes requisite to bind the wife's separate property; they make the same averment as to the bond from themselves to the defendant, and allege that it was in-

tended to be thus binding, and aver a readiness, if it be deemed insufficient for that purpose, to make it complete and binding, and pray that in case it be held insufficient, that the court render such decree in the premises as will bind the separate property of the wife.

J. M. Watson sold to Chandler 2500 acres of land at the price of $2 50 per acre, of which the tract in question was a part, and on the 14th day of May, 1857, with his wife, executed a bond to make title to said Chandler on the payment of the purchase money, which, by the terms of the contract, was to become due on the 1st day of January, 1861. The bond was not acknowledged, nor authenticated for record, nor was there any private examination or acknowledgment made by the wife, until the 28th day of September, 1858. It was recorded in the office of the County Clerk of Walker County on the 6th day of October, 1858. No portion of the purchase money had been paid by Chandler to Watson and wife at the date of the trial, nor was it then due. Watson was a witness to the bond from Chandler and wife to defendant, B. S. Green; and stated that " at that time he heard no representations as to the title." Two of the sons of the defendant, B. S. Green, a few weeks before the date of the bond, had contracted with Chandler for the purchase of the land for their father, at the price of $4 per acre, at which time Chandler executed a bond for title, and according to the best recollection of one of the witnesses thereto, Chandler represented the title to be good. When the defendant, B. S. Green, some weeks afterwards, came over from his home in Austin County, the purchase was made as stated in the pleadings, and the title bond executed described therein. It does not appear what were the contents of, or what disposition was made of the first bond, nor indeed to which of the Greens it was made payable. It was made known at the time of making the first trade, that Chandler held Watson's bond for title. It does not appear that Green or his sons saw the bond from Watson.

The defendant, B. S. Green, went upon the land about the first day of July, 1857, and remained on it until the early part of the

succeeding summer. He made improvements on the land worth about $1400.

J. J. Youngblood testified that about the time that Green left the land, the latter told him that it was impossible for him to pay for the land, and that he was going to leave it; that he was afraid it would revert to Watson, and thereby lose his improvements, but said nothing about Chandler's inability to make title. That Green proposed to give up his improvements and the money he had paid Chandler, if Watson would take back the land; which proposition the witness submitted to Watson, who declined it. J. M. Watson testified that he told one of Green's sons that he held the whole tract of land as security for the purchase money; never heard Green object to the imperfection of the title; that the title is not in himself, but claims it in right of his wife and his minor son, who are the heirs at law of Thomas Youngblood, deceased. The witness stated that he is now (11th day of May, 1859,) prepared to make title on payment of the purchase money, or when it becomes due according to the contract. He stated that Chandler has six or eight hands, and regards him as responsible for the value of the land, and that he himself is also responsible. The character of title by which Chandler and his wife possessed the slaves is not shown by the testimony nor by the pleadings of the plaintiffs.

Hopkins testified that before Green abandoned the premises, in the year 1858, he proposed, as a compromise to Chandler, to give up all his improvements, and the $690 he had paid, if he would take back the land and give up his note; and that if he did not accept the proposal, he would sue to rescind the contract. Chandler refused. Whereupon Green abandoned the land.

The court charged the jury as follows:

" To enable the defendant Green to maintain his suit or defence for the rescission of the contract for the land, it is necessary, under the pleadings, that it should be shown either :

" 1st. That the plaintiff Chandler made representations that he had a good title on which Green relied, and was thereby induced to purchase, and that the representations were false in fact, because the title was defective in some material point; or,

" 2d. That if there were no false representations, yet that, in fact, there was and is a superior outstanding title in a third person, on which, as a perfect title, that party can recover the land; and that there is danger he will do so; or that the plaintiffs, Chandler and wife, are insolvent, so that they cannot procure the title to meet the obligation of their bond.  The burden of proving these requisites rests on the party alleging them, for the presumption is always in favor of the fairness and validity of transactions, until the contrary is proved, either directly or by circumstances.

" On the first question if you find, from the evidence, that Chandler made representations to Green that he had a good title, that is, a perfect title, and designedly concealed the character of title which he held, so that Green was deceived and induced to buy the land, then you will inquire whether any defect of a material character has been shown in his title; but if you believe otherwise, or there is not satisfactory proof of such representations, or if Chandler made known to Green what title he held under, then it is immaterial to inquire whether there was a defect in his title or not.

" But if you find that such representations were made by Chandler, the court instructs you that the bond for title from Watson and wife to Chandler, although not acknowledged by the wife before a notary public until after this suit, was not a nullity or absolutely void.  Nor was it so materially defective as to sustain the charge of fraudulent title.  It was good between the parties so long as they claimed benefit under it; and its subsequent acknowledgment by the wife before a notary ratified and confirmed it as valid for all purposes.

" The bond for title from Chandler and wife to Green is also valid and binding against both of them.

" On the second question, the statement in the bond of Watson and wife that the land had been conveyed to Thomas Youngblood, deceased, she claiming in the bond to be his heir, although there was another heir, is no sufficient proof of a superior outstanding or adverse title in a third party.

" The record of the suit in Montgomery county, of Cawthon and Bailey, claiming the land by tax title in 1842, is not proof of the

existence of such a title, much less that it is a superior valid title. That record only proves the fact that such a suit has been instituted.

" On the whole case then, as to titles, the court instructs that the law of the case is with the plaintiff, for want of sufficient proof of any material defects in his title in a third party. "

Verdict for the plaintiff, upon which the court decreed a dissolution of the injunction; the enforcement of the contract between the plaintiffs and the defendant; and the note sued on not being yet due, ordered the cause to stand over for final judgment after the 1st day of January, 1861, and adjudged the costs of suit against the defendants.

*A. P. Wiley* and *Leigh & Baker*, for the plaintiff in error.

*Branch & Abercrombie*, for the defendants in error.

ROBERTS, J.—The charge of the court is concluded with the following instructions, to-wit: "On the whole case then, as to titles, the court instructs that the law of the case is with the plaintiffs, for want of sufficient proof of any material defects in his title, or of any valid superior title in a third party." This in effect decided the case. For if there was no sufficient evidence of a defective title, or superior outstanding title in another, the grounds set forth by Green in his answer, for a rescission of the contract of sale had failed. The true issue was whether or not Green had a right, under all the circumstances, to abandon and rescind the contract at the time he gave notice to Chandler that he would abandon it, and in pursuance thereof did leave the premises.

The suit was in substance on the part of Chandler an effort to enforce a specific performance of the contract for the sale of land, and on the part of Green an effort to have it declared to have been already rescinded by virtue of his own acts of renunciation and abandonment, predicated upon the then existing state of things.

The grounds upon which Green claimed to be entitled to have the contract declared to be rescinded, which the evidence tended to establish, were, that Chandler represented his title to be good at

the time of the sale, and that he purchased relying upon such representation; that Chandler had no title to the land which authorized him to sell it; that he, Green, had paid a part of the purchase money, had made valuable improvements, would continue to improve and cultivate the land if he remained upon it, and the bond given to him by Chandler and wife was no adequate security for the damages he might sustain if Chandler ultimately failed to make him a title; and that after finding out the defect of title in Chandler, he, Green, offered to rescind the contract, give up the money paid, and his improvements, as a compromise, and upon his proposition being rejected by Chandler, he gave notice that he would abandon the contract, and in pursuance thereof did abandon the premises.

An examination of these grounds separately will facilitate a proper understanding of the case.

1st. That Chandler represented his title to be good at the time of the sale, and that he, Green, purchased, relying upon such representation.

It will be proper first to consider the subject upon the supposition that the representation was not fraudulently made, and did not deceive Green in the purchase. This representation, in the absence of fraud, is nothing more than what is implied from the execution of the bond from Chandler and wife to Green. The fact that a party undertakes to sell, implies an affirmation on his part that he has such title on his part as he binds himself to convey. (3 Blackstone, 451; Story on Sales, 367; 9 Price (Eng. Exchq.) 488, Purvis v. Rayer; and 5 Barn. & Adolph. Souter v. Drake, 992.)

The allegation and proof that Chandler did actually represent his title to be good was not otherwise important, in the absence of fraud, than as showing that he did not agree to take such title as Chandler had, or that he would risk his then having or afterwards getting a more perfect title than that which he then had. If Green purchased with a knowledge of any defect of Chandler's title, or with any risk as to his getting a better title, those were facts to be alleged and proved by Chandler, in order to enable him to hold Green bound to adhere to this executory contract. (Cooper

v. Singleton, 19 Tex. R., 260.) The charge omits to present the existence of this implication, and to fix the burthen of removing it upon Chandler.

2d. That Chandler had no title to the land which authorized him to sell it. Chandler held under a title bond from Watson and wife. The land sold was the separate property of Watson's wife, and there was no private examination and acknowledgment of the bond by Mrs. Watson, nor was it on record, up to the time of the institution of the suit and the filing of the answer or cross-bill. Chandler had not paid one cent toward the land thus sold. It is not shown that Green was apprised that Mrs. Watson had not fully and properly executed the bond, at the time of the sale, and it is only rendered probable that he knew that Chandler had paid nothing toward the land. Green's knowledge or information of these facts, or either of them, was a question for the jury, to be determined under an instruction that the burthen of establishing such knowledge or information rested upon Chandler. That these facts, constituting the alleged defects of title, existed, is not denied and was not controverted. Chandler then had simply no title at all to the land which he had undertaken to sell to Green. Nor did he have that which would, in law or equity, give him any pretence for asserting a title to the land. (Callahan v. Patterson & Patterson, 4 Tex. R., 61.)

If Green had no notice of the facts, and particularly of the important fact that Mrs. Watson had not properly executed the bond, he had the right, *prima facie*, upon ascertaining the defect, to renounce the contract at once. (Higgison v. Clows, 15 Vesey, 524; Hovendon, 2 vol., 9–30.) In the case of Purvis v. Rayer, it is said that "it is a general rule in equity, founded on the principles of honesty and the dictates of good sense, that if a person, generally speaking, offers any thing for sale, the vendee, or he who becomes the purchaser, is entitled to see that the vendor has it with the qualifications, and in the way in which he, the vendee, understood that he bought it; that is, so as to afford him an assurance of having bought what he wanted, and meant to buy, or at least, what was offered or professed to be sold, or he may reject the contract." (9 Price, 488; 4 Eng. Exchq., 188.) As it is

expressed in Story on Sales, "where there is a total failure of title on the part of the vendor, the vendee may, if the contract be executory and unfulfilled, refuse to perform it, and reclaim any portion of the purchase money which he may have advanced." (St. on Sales, 176; Barn. & Adolph., 999; Sugden on Vendors, 1 vol., 241; Judson v. Wass, 11 Johns. R., 528.) "Where one party fails in performing the contract, the other, if he mean to rescind it, should give a clear notice of his intention." (1 Sugden on Vendors, 266.) If a party wishing to rescind the contract fail to give such notice, by some act indicating his intention, in a reasonable time after he is apprized of the defect, he may often be deemed to have waived his right to abandon the contract, if afterwards the vendor should be able to make a title. (Hogart v. Scott, 1 R. & M., 293; 1 Adolph. & Ellis, 40.) This right to abandon the contract is subject to many equitable qualifications, dependent upon the various circumstances in which the parties are placed, and the relations they occupy towards each other in reference to the trade, and upon the conduct of the parties after the defect is discovered, &c.

For instance, in this case, this implied affirmation of title in Chandler was part of the consideration of the contract, as well as the mere promise of Chandler and wife to make a title upon the payment of the money. If it was not shown that Green relied alone upon such mere promise, and it appeared that Chandler had no title, then one of the considerations which constituted Green's security did not exist. He had not obtained all that he had contracted for. His chances for ultimately getting a title were diminished far below what they would have been if Chandler had such title as his contract implied. The purchase money he had already paid, and the improvements put upon land were more liable to be finally lost. On the other hand Chandler, although he had failed to have such right to the land, was not yet in default as to his promise to make title; for the money had not been paid, nor had the time arrived for the payment of the money, and Chandler might be able to cure the defect in his title before that time arrived, and he had placed Green in possession of the land. Still, Green could not be expected to

continue to expend money and labor on the land after the discovery of his diminished security, unless the security, which he certainly had, [the personal obligation to make title under a penalty,] was sufficient to protect him in the damages he might sustain if he never got a title. This gave him a right to re-investigate the extent of his remaining security, and to be assured by Chandler that it was sufficient to protect him; or to demand that Chandler should put himself in possession of the right implied in his contract. If Chandler had supposed he had a right to sell, and was therefore a *bona fide* seller, it would be reasonable that Green should give him notice that he was dissatisfied with his security; and if Chandler then failed, after a reasonable time, to cure the defect, or to give assurance of ample security that he would make title, Green would have the right to abandon the contract, by giving notice to that effect and leaving the premises. (Taylor v. Brown, 2 Beavan, 183; Watson v. Reid, 1 Russ. & Milne, 236.)

Should Chandler afterwards cure the defect and seek to enforce the contract specifically, it would be incumbent on him to show that he had, in a reasonable time, cured the defect, or given ample assurance of security, or such other facts as would make it clearly equitable and just to decree a specific performance. (Jenkins v. Hiles, 6 Ves., 655; Mortlock v. Buller, 10 Ves., 315.) If the failure of title and notice of dissatisfaction and intended repudiation be shown, the burthen of showing the facts which would, in equity, entitle Chandler to enforce the contract, would rest on him; and it would not be incumbent on Green to disprove them in the first instance, to entitle him to rescind.

3d. The security for a title which Green had remaining at the time he gave notice of intended rescission, was the penal bond signed by Chandler and wife. This was not an obligation relating to her separate property. It would not bind her separate property, nor could it be made the foundation of a decree of court, subjecting her separate estate to liability for it. Green's only security, therefore, was the personal liability of Chandler on the bond; and the amount of his property, as distinct from that of his wife's, was not shown by Chandler, nor did it otherwise appear in the evidence.

The views thus far presented are predicated upon the assumption that Chandler sold the land in good faith, supposing he had a right to sell it, and that he did not purposely fail to exhibit the defect. In such case courts of equity, while recognizing the legal right of rescission, are liberal in relieving against the inequitable exercise of it, when the substantial rights of the parties can be preserved. (Salisbury v. Hatcher, 2 Young & Coll., 54; Voorhees v. Meyer, 2 Barbour Sup. C. R., 47; Dutch Church v. Mott et al., 7 Paige, 77; Wood v. Machin, 5 Hare, 160; Eyston v. Simonds, 1 Young & Coll., 611.)

The rules of equity are very different, however, in a case of actual fraud. If Chandler was aware of the defect of his right to sell, and withheld information of it, and expressly represented that he had a good title, [that is, such valid right as authorized him to sell,] with intent to deceive Green, and thereby did decoy him into a purchase, a court of equity would not relieve against a rescission of the contract of sale by Green. Such positive fraud would vitiate the contract, and equity would not help it out. (2 Sugden, 235, 240; 1 Brown, 62, 440.) Green, upon discovering the fraud, might at once give notice of his repudiation, either directly or by some act clearly manifesting it, and abandon the premises, and resort to any legal means to be restored to his rights or recover his damages. (Campbell v. Flemming et al., 1 Barn. & Ell., 40.) The fact that Chandler, after such abandonment, cured the defect in his right, or that Watson offered to make a good title upon the payment of the money by Green, would not defeat Green's right to rescind the contract. (Dalby v. Pullum, 1 Russ. & Milne, 296.)

"The effect of fraud is, not to alter the agreement partially, but to vitiate it in toto. A party who has been guilty of any sort of misrepresentation is barred, personally barred, from all right to enforce a contract, which that misrepresentation can have had any influence in inducing the other party to agree to." (Clermont v. Tasbury, 1 Jac. & Walk., 120; Cadman v. Horner, 18 Ves., 10; Winch v. Winchester, 1 Ves. & Beat., 378; 1 Sugden on Vendors, 235, § 30; Edwards v. McLeary, Cooper's Ch. Ca., 318; same case, Swanst. Ch. R., 302.) "Where a person takes upon

himself to contract for the sale of an estate, and is not absolute owner of it, nor has it in his power, by the ordinary course of law or equity, to make himself so, though the owner offer to make the seller a title, yet equity will not force the buyer to take it; for every seller ought to be a *bona fide* contractor." (Sugden, 2 vol., 241, § 52.)

There is no evidence in this case of acquiescence in the contract notwithstanding the fraud, if fraud existed, and therefore it is unnecessary to press the inquiry into a consideration of the rules of equity on that subject. (Campbell v. Flemming *et al.*, 1 Adolph. & Ellis, 44; Story on Sales, § 159, p. 137.) If there was a fraudulent representation as to Chandler's title, upon which Green relied and acted in the purchase, this defect in Chandler's right was a sufficient ground for rescinding the contract, if Green chose to do it. The defect existing at the time Green gave notice of abandonment and left the premises, and at the time of bringing the suit and filing the answer, the fact of curing the defect some months afterwards, by an acknowledgment of the bond by Mrs. Watson, would not relieve Chandler against the rescission.

The charge of the court in this case gave to the title of Chandler, notwithstanding its defect was cured after notice of renunciation of the contract, and after suit brought to rescind, the same effect as though it had been equally perfect at the time of the sale. This would certainly not have been correct if the jury had believed that Chandler had made a fraudulent representation or concealment, by which Green was deceived.

Under any view of the case that the jury might have taken of the evidence, as to the fraudulent representations, it was admitted that Chandler's right was defective until some time after the suit was brought and the answer filed; and that rendered it inequitable for Green to pay the costs. (Eyston v. Simmons, 1 Young & Coll., 613; Dutch Church v. Mott *et al.*, 7 Paige, 77.)

We are of opinion that there was error in the charge of the court, and therefore the judgment will be reversed and the cause remanded.

                              Reversed and remanded.