## H. L. HALL v. M. CLOUNTZ.

### Decided May 29, 1901.

**1.—Assignment of Error—Propositions in Brief.**

Assignments of error that are not propositions of law in themselves, and are not accompanied by propositions in the brief, will not be considered.

**2.—Continuance—Diligence—New Parties.**

Where the necessity, if any, for the joinder of certain other parties arose from the allegations of defendant's answer, filed just before trial, defendant's application for continuance to obtain evidence because of such joinder was properly overruled where he could have taken such evidence without waiting for the filing of his answer and the joinder of such parties, and no diligence was used by him in that respect.

**3.—Evidence—Contradicting Witness.**

Where defendant's witness denied that he had stated to defendant's counsel that one R. had made certain statements to him about the title to the land in question, it was not error to refuse to allow defendant to introduce R. to contradict and impeach the witness.

**4.—Same—Admissions of Party.**

The admissions of a formal party to a suit, against whom neither plaintiff nor defendant asked relief, and who asked no relief, were properly excluded as against the plaintiff.

**5.—Rescission of Contract—After-Acquired Title.**

Where an action is brought by the vendee to rescind because of fraudulent representations as to the title, his right to such rescission is not affected by the vendor's acquirement of title after the right to rescind has been so asserted.

**6.—Same—Immaterial Error—Definition of "Good Title."**

Where, in such action to rescind, the evidence clearly established that defendant did not have title at the commencement of the suit, error in the charge of the court in giving too strict a definition of "good title" was immaterial. See definition held too onerous on the vendor.

**7.—Practice in Trial Court—Change of Ruling.**

That the court during the trial changed its rulings as to the admissibility of certain evidence and defendant had dismissed certain witnesses because of the ruling as first made, does not afford ground for reversing the judgment where the trial continued four days after such change, and defendant made no effort to get the witnesses.

**8.—Title by Limitation.**

See the opinion for evidence held not sufficient to show title to land by limitation.

Appeal from Grayson. Tried below before Hon. Don. A. Bliss.

*E. C. McLean* and *Wolfe, Hare & Semple,* for appellant.

*W. D. Gordon* and *W. J. Brown,* for appellee.

JAMES, CHIEF JUSTICE.—Plaintiff Clountz alleged that Hall, about October 5, 1891, executed to T. J. Moore a bond for title to 103 acres of land, a part of a survey originally granted to Joseph Reese, in consideration of $100 cash and eight notes payable yearly after date. That on or about November 13, 1893, he executed a bond for title to J. D. Vaught for 207 acres in same survey in consideration of nine notes due yearly after date. The he covenanted in said bonds for good and sufficient title. That at the time of said purchases, respectively, Hall falsely and fraudulently, knowing the representations to be false, and with intent to cheat and defraud said purchasers, represented to them that he was the legal and equitable holder of a good and perfect title to said land, and that Moore and Vaught believed the representations to be true and relied upon them, and were induced thereby in making the purchases and executing the notes, which they would not have done had they known their falsity. And relying thereon, they went upon the land, fenced and put a portion thereof in cultivation and improved the same.

That afterwards Clountz bought the equities of Moore and Vaught, and by arrangement with Hall took their place with reference to said bonds; that at the time of and just prior to such transactions respectively, they acquainted plaintiff with the said representations made to them by Hall as to his title; that plaintiff at and before he purchased of them communicated said representations to Hall, who then and there affirmed that he had so represented, and that the representations were true; that plaintiff then and there told Hall that he would not purchase from Moore and Vaught and would not take their place, unless defendant had a good and perfect title to the property and could at any time make plaintiff good and perfect title; that defendant then represented to plaintiff that he was the legal and equitable owner of the land in fee simple; that if plaintiff would purchase the interests of Moore and Vaught, he would at any time plaintiff would offer payment, whether due or not, make plaintiff a good and perfect title in fee simple, which he declared he could do at any time; that plaintiff knew at the time that he did not have such title to said lands, and that his representations were false and fraudulent and made for the purpose of deceiving and defrauding plaintiff; that plaintiff would not have traded with Moore and Vaught and with defendant but for said representations, upon which he relied and by which he was induced to purchase from them, and to pay them the amount alleged, and to assume the payments of their notes to defendant.

That plaintiff had no such title, which fact plaintiff did not know

until shortly about three months before the bringing of this suit. That promptly after learning the facts, he repudiated the transaction and demanded of defendant settlement, and offered back the possession of the premises, and demanded a cancellation of plaintiff's obligations, and offered to do all things which equity required of him in the premises, all of which was refused. That if there appears to have been undue delay in bringing this suit, it was due to promises of settlement by defendant. That defendant at the time of the filing of this suit had no title to said lands, and held only some void tax deeds to undivided portions thereof, but if he had any other deeds they had no connection with the sovereignty and were not title. That if it be held that defendant has the right to set up title he may have obtained since the filing of this suit, then plaintiff says that the conveyances he has thus obtained extend only to about an undivided one-fifth interest in the lands.

Then follow the allegations of plaintiff's equities, such as payments made by him, improvements, and taxes, concluding with this prayer: "Premises considered, plaintiff prays that said contracts and obligations entered into between plaintiff and defendant be canceled, rescinded, and annulled; that plaintiff recover of the defendant the sum of $1637, with legal interest thereon from the dates of his payments, as alleged on pages 10 and 11 supra, and the further sum of $895, the value of his improvements with legal interest thereon, and the $60 taxes paid by plaintiff, making a total of $2592, besides interest, together with costs of suit and such other relief, general or special, legal or equitable, as plaintiff may show himself entitled to, together with a lien on such interest or claim to said premises, with foreclosure thereof, as defendant may have therein, for the payment of such sums of money as plaintiff may recover of defendant. Plaintiff says that defendant received on said bonds the sum of $1500. In the event that plaintiff should not be entitled to the relief above prayed for, and in the event that it should be held that plaintiff is not entitled to rescind said contracts and be placed in statu quo, and in the event it should be held that plaintiff has affirmed said contracts, then, in the alternative, plaintiff prays for damages against defendant on account of the premises in such sum as the facts may show him entitled to, to the amount of $2500, together with costs of suit and general relief. And plaintiff here offers to do any and all things which in equity and good conscience he ought to do, to entitle him to relief herein prayed for."

We have given briefly the substance of the third amended original petition as the best manner of indicating the nature of this proceeding. It will consume too much space to set forth here the substance of the answer. This we expect to do where necessary in passing on the assignments. The judgment, entered upon verdict, was for plaintiff, annulling the contract and awarding Clountz $2063.36.

On December 1, 1900, the day the trial was begun, Moore and Vaught appeared as parties defendant, and adopted the pleadings of plaintiff,

and prayed for such orders as were just and equitable and for general relief.

Many of the assignments of error are not presented in the brief of appellant in such manner that we may consider them under the rules governing briefs, being neither propositions of law in themselves, nor accompanied by propositions. Assignments numbers 1 to 5, inclusive, are presented in this way. The sixth assignment alleges that the court erred in overruling defendant's application for continuance. We doubt the propriety of considering this assignment, for like reason, but in view of some doubt on the subject, we have investigated its merits. It appears that the first amended original petition had alleged a conditional assignment from Jones and Vaught to plaintiff Clountz, and in view of this, upon demurrer, the court, in 1899, ruled that Jones and Vaught were necessary parties. Afterwards, in October, 1899, plaintiff filed a second amended original petition, alleging an absolute and unconditional assignment from said parties to him, which allegation was carried into his third amended petition. Thus, from October, 1899, the petition did not render it necessary to make them parties, and if they afterwards appeared to be necessary parties, they were made so by defendant in his amended answer filed just before the trial. These persons appeared and made themselves defendants. After Moore and Vaught had filed their answer, defendant announced in open court that he asked no recovery against them. Clountz asked no relief as against them, and they sought no recovery. They were in fact merely formal parties. In appellant's argument under this assignment, the reason assigned why the continuance should have been granted is that any diligence defendant could have exercised in taking evidence would have been of no avail until Moore and Vaught had been made parties. It seems to us, in view of the amendments, and of the fact that since it was on file from October, 1899, up to the trial, there was no reason apparent upon the pleadings for joining them as parties, and the necessity, if any, for joining them arose from defendant's allegations, he is not excused for not having taken evidence.

We pass over the seventh, ninth, twelfth, fourteenth, seventeenth, twenty-first, twenty-third, twenty-fifth, thirty-sixth, fourty-fourth, and thirty-seventh assignments as violative of the rules in their manner of presentation.

By the tenth assignment error is alleged with reference to certain testimony of a witness, Actley. Appellant put this witness on the stand and asked him if he had ever said anything to Clountz prior to the latter's purchase from Vaught about the title to the land, and about one Bob Richardson stating to him that Hall had only a tax title. The witness answered that Richardson had said something of the kind to him, and one day while Clountz was tramping cotton in a wagon and witness was down on the ground helping to load it, witness remarked that he had heard Hall didn't have a good title to the land; that Clountz did not make any reply and witness did not know whether he heard

what he said or not.   Thereupon defendant's counsel claimed surprise, and the court allowed him to put to witness a leading question as follows: "Did you not tell me that Bob Richardson came to you and told you to go and tell old man Clountz that Hall had nothing but a tax title, and that you went and told him that, and that Clountz told you to go back and tell Bob Richardson that when he needed his advice he would send for him?"   To which witness replied that he did not.   Counsel then asked witness what he stated to Richardson, to which objection was made that it was hearsay, Clountz not being present, which was sustained.   Counsel then offered to introduce Richardson to contradict witness as to his testimony to the effect that witness did not state to Richardson the facts sought to be proven by said question above set out. This was ruled out because hearsay, Clountz not being present, and that defendant could not impeach his own witness on said matter as he sought to do.

The above are the facts disclosed by the bill.   The witness had not been asked whether or not he had made a certain statement to Bob Richardson.   He was asked whether or not he had made a certain statement to defendant's counsel, and had replied that he had not, and counsel did not undertake to testify that he had done so.   There was no ground for permitting Richardson to testify as proposed.   It seems to us that the assignment is not well taken.   Gillett on Ind. and Coll. Ev., sec. 89; Underh. on Ev., sec. 350; McKelvy on Ev., pp. 329, 331.

The thirteenth assignment and the proposition under it can not be sustained.   The admissions of Vaught were not, under the conditions surrounding this trial, evidence against Clountz.   Vaught, as already shown, was in fact a merely formal party to the suit, and no one asked relief against him, nor did he seek relief against anyone.   The issues were between Hall and Clountz.   There was no occasion to use Vaught's statement against him under these circumstances, and appellant's proposition under this assignment is simply this, that "the admissions and statements of a party to a suit are admissible against the party making same."   On objection of Clountz they were properly excluded.

The seventeenth, twenty-first, twenty-third, and twenty-fifth assignments are grouped by appellant, and are based on what appellant contends to have been an incorrect and prejudicial definition of what is meant by "good title."   The definition appears to us to have been more exacting as to appellant than was proper to give in a charge, and under the facts and circumstances of the case it may have been equivalent to an instruction that defendant had no such title.   The testimony, however, seems to relieve the record of any reversible error in this respect. In Green v. Chandler, 25 Texas, 160, it is distinctly announced that in a case of rescission by the vendee for fraudulent representations as to title, the right to rescind is not affected by the vendor's acquisition of a title after the right to rescind is asserted.   Here it was admitted in appellant's own testimony that until the filing of this suit he held and claimed the land through tax deeds, and that he afterwards acquired

certain undivided interest in the property by conveyances. He did testify that he claimed the land by limitations under the tax deeds, and it is our opinion that such a title, when the facts and circumstances clearly show it has taken effect, meets all the requirements of a "good and perfect title." But the testimony failed to show that Hall had such title to the lands at the time of the bringing of this suit, or, for that matter, even afterward. This in its effect disposes of the complaints made by the eighteenth, nineteenth, twenty-sixth, thirty-second, twenty-seventh, and thirty-ninth assignments.

The amendment referred to in the twenty-second assignment did not set up a new cause of action. The evidence of Clountz seems to be undisputed that he did not know the condition of Hall's title until the latter part of 1896, less than two years before the bringing of this suit. Therefore there is no force in the thirtieth assignment.

In reference to the twenty-ninth assignment we think the objections to the thirty-fifth paragraph of the court's charge are not tenable, when that charge is considered with charges given at appellant's request on the same subject, in one of which said paragraph is referred to and construed or explained to accord with appellant's views.

The charge complained of by the thirty-first assignment was warranted by the testimony. The only complaint indicated in appellant's proposition is that there was no evidence upon which it could be found that the rents and the claim for improvements were equal. There was such evidence.

Having considered all of the assignments except those which the rules preclude us from noticing, and finding no error, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

We have again inspected the numerous assignments of error not considered by us, and now conclude that one of them, the fourteenth, does not violate the rules. The substance of this assignment is that defendant was prejudiced in the trial by the court changing a ruling he had announced, thereby causing defendant to lose the testimony of witnesses he had dismissed on account of the ruling. This matter comes to us upon affidavits in connection with the motion for new trial. One of these is the affirmation of the trial judge, which, if taken as true, deprives the assignment of any force. It seems that early in the trial, which according to the recitals in the judgment lasted four days, defendant's counsel had notice of the court's change of ruling, and for aught that appears may have had and probably did have ample opportunity to get the witnesses, but made no effort to do so, and proceeded with the trial, and introduced testimony with reference to the particular issue, that of title by limitations. We are therefore unable to sustain the assignment.

As stated in the opinion heretofore delivered, the charge was too oner-ous as to appellant in defining "good title." The charge was as follows: "But you are instructed in this connection that every purchaser of land has the right to demand a title which shall protect him from anxiety lest annoying, if not successful, suits be brought against him, and probably take from him or his representatives land upon which money was invested. He should have a title which will enable him not only to hold his land, but hold it in peace, and, if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value. This is what is meant by a good title." The title which this charge affected was that of limitations. Nothing would have satisfied this charge short of clear and convincing proof of such title, and even then the jury might not have been willing to say that the vendee would be free from anxiety or litigation with reference thereto. We think the title would be good if reasonably free of doubt. In the opinion we over-came this error by concluding from the evidence that no title by limitations was shown. We now give the reasons for this conclusion.

According to the testimony upon which appellant relies, one Henderson, who had a cultivated farm on the adjoining survey, had a part of the Reese survey, about 35 acres, inside his fence. Upon this fact being discovered in December, 1884, Henderson leased it from Hall and so held it until 1887. In 1887 and 1888 one Riche rented it from Hall, and in 1889 Riche bought from Hall by bond for title a part of the Reese survey, about 207 acres, now known as the Vaught tract, including said 35 acres. As we read and understand the evidence the 35 acres, up to the time of Riche's purchase in 1889, was fenced off with the Henderson land from the rest of the Reese survey. This would not constitute possession of the rest of the Reese survey. Texas Land Co. v. Williams, 51 Texas, 61; Read v. Allen, 63 Texas, 158. There is evidence that since said purchase by Riche the Vaught tract has been cultivated every year by Hall, or those holding under him. Riche afterwards turned the land back to Hall, who, in 1893, sold it to Vaught, and it was bought by Clountz in the latter part of 1894, Clountz taking possession of it in December, 1894. He filed this suit for rescission in July, 1897. From this testimony it might possibly be said that there was a title by ten years limitations to the 35 acres, but not as to the remainder of the Vaught tract. There was not sufficient time between 1889 and 1894, or even 1897, to give effect to the statute of ten years. As to the Moore tract, evidence of title by ten years limitations is less sufficient.

As to the statute of five years, the bond for title to Riche was never recorded, and his possession for the time he had it under his bond can not be counted. Neither can the periods when Vaught and Moore had possession under their bonds for title, as they were never recorded. Under these circumstances there was no title by the five years statute.

The verdict in this case, in view of the charge, shows that it was found by the jury that the sale to Clountz was fraudulently procured by Hall. Then, according to the opinion in Green v. Chandler, 25 Texas, 148, if

the title was not good at the time Clountz undertook to rescind, he had the right to have the contract rescinded. It can not be said from this record that Hall had a good paper title. We have shown that the title had not become good by reason of limitations. Any errors in the charges concerning title by limitations are therefore immaterial.

The motion is overruled.

*Overruled.*

Writ of error refused.