## BUCKINGHAM v. THOMPSON.

(Court of Civil Appeals of Texas.   Feb. 15, 1911.   On Motion for Rehearing, March 15, 1911.)

1. VENDOR AND PURCHASER (§ 125*)—REMEDIES OF PURCHASER—RESCISSION—EFFECT.

Where the purchaser, relying on the vendor's statement that the title was perfect when there was an outstanding vendor's lien upon the property of which the land sold was a part, without any provision having been made by the vendor for the purchaser's protection against such lien, and, discovering such fact, rescinded the contract, the rescission was effective, though the vendor afterwards placed the purchase-money notes with his vendor so as to obviate any danger of loss of title by reason of the outstanding lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 228, 233; Dec. Dig. § 125.*]

2. VENDOR AND PURCHASER (§ 121*)—RESCISSION—ACTS CONSTITUTING.

Where the purchaser learned about the 1st of May that there was a vendor's lien on the land, and did nothing until September, when he informed the vendor that he was dissatisfied and wanted his money back, and would get off the land if his money was refunded, there was no rescission of the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 218, 219; Dec. Dig. § 121.*]

3. FRAUD (§ 25*)—INJURY FROM FRAUD.

Where the vendor, before the first purchase-money note became due, so placed such note with his vendor that his purchaser could not be injured by an existing purchase-money lien, the purchaser could not recover damages in an action to recover the land by the vendor because of false representations that the title was clear.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 24; Dec. Dig. § 25.*]

4. FRAUD (§ 11*) — MISREPRESENTATIONS — STATEMENTS OF OPINION.

The vendor in selling land used pamphlets to induce a sale which described the land as richer than the valleys of Southern California, and as a land of fruit and flowers, and happy homes which would treble and quadruple in value within two years, and referred by analogy in describing the land to the Garden of Eden, Monte Cristo, and Aladdin's lamp, and also stated that the land could not be kept from becoming a land of gold, that all eyes were turned on Southwest Texas because the natural resources were there, and the tide of immigration would turn that way, and it was a full tide, and that independence was to be had there for the asking. *Held*, that such statements were mere expressions of opinion, and hence would not support an action for deceit.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 12, 13; Dec. Dig. § 11.*]

5. FRAUD (§ 11*) — MISREPRESENTATIONS — MATTERS OF OPINION.

A representation by the vendor of land that a railroad then undertaken would be built

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

near the land by a certain date was a mere expression of opinion as to the time when the railroad would be completed, and would not support an action for deceit.

[Ed. Note.—For other cases, see **Fraud, Cent. Dig. §§ 12, 13; Dec. Dig. § 11.***]

**6. FRAUD (§ 9*)—MISREPRESENTATIONS—NA-TURE.**

If the vendor of land made false representations as to what the land would produce, and the purchaser relied thereon and would not have purchased had he known such representations to be false, he could maintain an action for deceit.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 8; Dec. Dig. § 9.*]

**7. FRAUD (§ 60*) — MISREPRESENTATIONS — SALE OF LAND—MEASURE OF DAMAGES.**

One who purchased land because of false representations as to what it would produce could recover of the vendor as damages for the deceit the payment he had made, with interest from the date he was evicted for nonpayment of purchase-money notes ·because of such false representations, together with a reasonable allowance for improvements made in good faith upon the land before discovering the misrepresentations, but would not be entitled to interest on the payments made for the time 'he was in possession of the land.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 65; Dec. Dig. § 60.*]

**8. VENDOR AND PURCHASER (§ 185*)—CON-STRUCTION OF CONTRACT—DEFAULT.**

Where the contract provided that, if the purchaser of land failed or refused to pay any of the purchase-money notes, the contract should become void, the purchaser's failure to pay the ·first purchase-money note falling due ipso facto terminated his rights under the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 369–372; Dec. Dig. § 185.*]

**9. VENDOR AND PURCHASER (§ 297*)—NON-PERFORMANCE—RETAKING POSSESSION—NO-TICE.**

Where, by the terms of a contract, it became void upon the purchaser's failure to pay a purchase-money note, and the purchaser refused to pay the first purchase-money note due, declaring his purpose not to surrender the land, he was not entitled to notice of the vendor's intention to take possession of the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 833; Dec. Dig. § 297.*]

On Motion for Rehearing.

**10. VENDOR AND PURCHASER (§ 296*)—DE-FAULT BY PURCHASER—RIGHT OF VENDOR TO RETAKE POSSESSION.**

Since a vendor cannot declare a forfeiture for a default directly resulting from his own fraudulent representations in inducing the sale, he would not be entitled to take possession of the property upon the purchaser's refusal upon learning of such false representations to pay· a purchase-money note due.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 832; Dec. Dig. § 296.*]

**11. SEQUESTRATION (§ 20*) — LIABILITY OF SURETIES.**

If a writ of sequestration was properly sued out, the sureties on the bond would not be liable in damages for any abuse in the execution of the writ not authorized by them.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 42–49; Dec. Dig. § 20.*]

Appeal from District Court, Zavalla County; R. H. Burney, Judge.

Action by E. J. Buckingham against J. S. Thompson, in which a writ of sequestration was sued out. From a judgment in part for plaintiff and in part for defendant, and in favor of the sureties on the sequestration bond, plaintiff appealed, and defendant made cross-assignments of error. Reversed and remanded except as to sureties, as to whom judgment is affirmed.

George C. Herman and Mason Williams, for appellant. Stirling T. Phelps, Albert S. Phelps, and Percy Faison, for appellee.

JAMES, C. J. This action was instituted by Buckingham on January 21, 1909, alleging: That on or about November 15, 1907, he and defendant, Thompson, entered into a contract whereby he agreed to sell certain land to Thompson, being certain farm lots in the subdivision of the Cross S Ranch in Zavalla county and certain town lots in Crystal City, also a part of said ranch, for the price of $3,600, to wit, $900 in cash which was paid, and three notes of $900 each payable respectively on November 15, 1908, November 15, 1909, and November 15, 1910, with 6 per cent. interest from date; the contract providing that, upon the payment of all said notes, plaintiff was to execute to ,defendant a general warranty deed, and providing also that, should defendant fail or refuse to pay or cause to be paid any of the payments specified in said contract, then the contract should become null and void. That defendant has failed and refused to pay the· first of said notes or any part· thereof, wherefore defendant has breached the contract, and under its terms the same has become null and void, and plaintiff is the owner in fee simple of said property and entitled to the possession thereof. That possession has been demanded, but defendant has failed and refused, and still fails and refuses, to deliver possession to plaintiff. The prayer was for possession and for a writ of sequestration, which writ was issued and executed and plaintiff given possession.

The defendant pleaded fraudulent representations,· whereby he was· induced, to enter into the contract and to make improvements on the land of about the value of $300 or $400. The false representations set up were, substantially: (1) That plaintiff informed defendant that he had a good and perfect title to the land, when in fact at that time the Cross S Ranch lands, of ·which this land was a· small part, were subject to outstanding vendor's lien notes for about $780,000, and there was no title from Pratt & Hays to Buckingham on record; although later such deed was put on record, which recited a cash consideration of $15,000 and notes· of the ·denomination of $15,000, many· of 'which were due

and unpaid at the time, each note providing for the maturity of all the notes, at holder's option, if any became due and unpaid. (2) False and fraudulent representations made to defendant by plaintiff and his agents concerning the value, quality, and productivity of the land, upon which defendant relied and, so relying, made the purchase. It was alleged that, when defendant ascertained the true conditions, he refused to make further payment, and demanded of plaintiff a rescission and cancellation of the sale and contract and a refunding of what he had paid and the value of his improvements and interest, which appellant refused; that appellant refused to cancel the contract, but sued defendant and sequestered the property and had the sheriff throw defendant and his family and all of his furniture and effects out and move them eight miles distant from the land, and dumped them in the middle of a country road during a drizzling rain and while defendant's wife and daughter were sick, greatly injuring their health and damaging the furniture. More briefly stated defendant answered by general demurrer, denial, and not guilty, and by way of cross-action asked for the rescission and cancellation of the contract of sale and a recovery of his $900 with interest and the value of the improvements he had placed on the land, and also asked for damages because of the wrongful suing out of the writ of sequestration and because of the manner in which the writ was executed.

It appears from appellee's brief that the trial court held that appellee was not entitled to recover on account of the sequestration, and damages in that regard were, therefore, not submitted. It appears that the only matter of damages submitted pertained to the question of fraud and misrepresentation of appellant and his agents as to title to the land and plaintiff's failure to tell appellee of the outstanding vendor's lien notes. The matter of fraud in respect to representation concerning the value, quality, and productivity of the land was not submitted.

The jury returned a verdict in favor of plaintiff for the possession of the land, in favor of defendant against Buckingham for $900 and the cancellation of the contract, and (under the instruction of the court) in favor of the sureties on the sequestration bond. Judgment was entered accordingly and is appealed from by Buckingham. Appellee has cross-assignments alleging errors.

We are of opinion that the court erred in submitting the case on the issue of fraudulent representation as to the title. There was, it is true, testimony to the effect that Buckingham informed Thompson that his title was perfect, and that the latter trusted to such statement in making the purchase, and but for this assurance would not have purchased. The title as it then stood was not perfect in Buckingham for the reason that

the entire property of which this purchase formed a part was in his hands, subject to an incumbrance in the form of vendor's lien notes, and there was at that time no provision or arrangement existing between Buckingham and his vendors, which safeguarded Thompson against the possibility of his losing the land after he had paid for it.

Under the above conditions, Thompson, on discovering the fact, would have had the right to rescind the contract. And he had this right to rescind notwithstanding that afterwards the danger to him from the incumbrance was removed. Green v. Chandler, 25 Tex. 148; Hall v. Clountz, 26 Tex. Civ. App. 348, 63 S. W. 941. In other words, the subsequent removal of the defect would not defeat defendant's right to rescind; the right having accrued.

The above rule applies only in connection with the exercise of the right of rescission; and in this case Thompson never rescinded nor undertook to rescind. His testimony was that in the last days of April or the first days of May, 1908, he learned of the lien on the land. He did not act promptly in declaring a rescission. In September, 1908, he says he undertook to tell Buckingham that he was dissatisfied, that he and his agents had misrepresented things, and that the whole matter was a fraud and he wanted his money back. He, on that occasion, had prepared a letter to Buckingham, which the latter refused to take when offered to him; the letter stating what Thompson demanded. This letter, according to the memory of a witness, was in substance that Thompson was disappointed with the Cross S Company and the land, and wanted his money back, and that he was willing to lose his work and improvements, interest on his money, and a year's time, and would get off the land, provided Mr. Buckingham returned him his money within 30 days, and that he (Thompson) refused to further go on with the contract. Thompson in his testimony stated that this letter was a demand for a rescission of the contract, as he had been swindled, and that he wanted to turn the land back and get his money and improvements.

The above conduct of Thompson was no rescission of the contract. In order to rescind and obtain the advantages that attend a rescission, it was necessary for him to surrender, or offer to surrender, the possession of the property unconditionally. Demaret v. Bennett, 29 Tex. 264. This he did not do, nor propose to do. He was clinging to the land, and proposed holding it, unless plaintiff complied with his demand for a restoration of what he had paid, etc.

The result of the above is that he was not entitled to the right peculiar to one who actually rescinds, and the rule announced in the two cases first cited has no application. Therefore when the first note became due in November, 1908, and Buckingham had, pri-

or to that time, so placed Thompson's notes with the vendor, or his trustee, that it was not possible for him to be damaged by reason of the vendor's lien if he went on and performed his contract, he could not recover damages by reason of the existence originally of the outstanding vendor's lien, and the reason why he could not recover damages on that ground was simply because the proof showed that he had not been damaged in that respect.

As it was upon this ground that the verdict was returned, the judgment must be reversed.

The defendant, as already shown, claimed that he was defrauded into making the contract, by means of misrepresentations concerning the land itself. Defendant's pleading sufficiently stated a case entitling him to a recovery of damages on this ground, if his allegation should be substantiated by proof.

We have no desire to comment on the testimony, but shall say that the pamphlets or literature, which appear to have been distributed and used by plaintiff's agents in the scope of their employment, extravagantly describing the advantages of the Cross S Ranch lands, consist in large part of expressions laudatory of these lands so extraordinary that no man of ordinary sense could be supposed to take them and act upon them at their face. We refer to such statements as that the land was richer than the valleys of Southern California; that it could not be kept from becoming a land of gold; that it was a land of fruit and flowers and happy homes; that independence was to be had there for the asking; that all eyes were on Texas, particularly Southwest Texas; that a home there would treble and quadruple in value within two years, because the natural resources are there, and the tide of immigration was turned that way, and it was a full tide. Due reference was made to the Garden of Eden, Monte Cristo, and Aladdin's lamp. There was also a representation that a railroad, then undertaken, would be built by this land by January 1, 1908, and the fact was shown that the road was finally built. This was a mere expression of opinion as to time, and would have been so taken by anybody.

But there was testimony of statements representing what the land would produce. Such were set forth not only in the said literature, but were testified to by defendant as having been made directly to him by Buckingham's agent. The testimony was sufficient to require the submission of the issue of fraud in the procurement of the contract in this respect, and if the representation in this particular was made and was false, and defendant did not know to the contrary, and relied on the representation, and would not have made the contract, had he known the truth to be otherwise, he would be entitled to recover of plaintiff the payment he had made with interest from the date of his eviction, and a reasonable allow-ance for what improvements he placed on the land in good faith prior to his discovery of the facts, according to the rule laid down in Chaney v. Coleman, 77 Tex. 100, 13 S. W. 850. We think he would not be entitled to interest on his payment during the time he had possession.

In view of the reversal of the judgment, we state further that we are of opinion that, by the terms of the contract of sale, defendant's rights under it terminated absolutely when he failed to pay the note due in November, 1908. That contract provided: "It is distinctly understood and agreed, however, that if the party of the second part, fail or refuse to pay or cause to be paid, any one of the payments hereinbefore described, then this contract shall become null and void, otherwise it shall remain in full force and effect."

Plaintiff had the legal title to the land, and, when defendant refused to pay the first note, the contract was by its own terms at an end as far as his rights were concerned. He had no right to remain in possession. Nor was he entitled to notice of plaintiff's action for the reason that he had declared his purpose not to surrender the land. Kennedy v. Embry, 72 Tex. 390, 10 S. W. 88. Under the terms of the contract, plaintiff became entitled to immediate possession. Defendant had no equities entitling him to hold possession. Under these circumstances, the taking possession through legal process was not wrongful and did not molest any right the defendant had, and we think the trial court was correct in not allowing a recovery of damages with reference to the suing out of the sequestration.

But, while this is so, it is equally clear that, if the writ was abused, and its enforcement was attended with unnecessary and oppressive features, and if plaintiff was a party to such use of it, he would be responsible to defendant for actual damages in that respect, and, upon proper allegations and proof, for exemplary damages also.

Our conclusions are summarized as follows:

1. Defendant under the testimony in this record was not entitled to recover damages for misrepresentation concerning the title.

2. Defendant was not entitled under the evidence to damages for the wrongful suing out of the sequestration.

3. Defendant was entitled to make proof of an unnecessary and oppressive use of the writ, and of plaintiff being a party to such proceeding and recover damages for such abuse of the writ.

4. Defendant is entitled to recover his damages as herein indicated, if his proof should warrant a finding that he relied on representations of plaintiff or his agents in reference to the productiveness of the land, and the purchase was made on the faith of such representations, and the same was false,

5. The judgment in favor of the sureties on the sequestration bond should be affirmed.

Affirmed as to the sureties; otherwise reversed and remanded.

### On Motion for Rehearing.

It is contended that we erred in applying to this executory contract a rule applicable to executed contracts of sale. The case of Green v. Chandler, 25 Tex. 148, in which the principles applied by us were declared, was in reference to executory contracts.

In this case Thompson did not attempt to declare a rescission until September, 1908, before which time the title was relieved of the danger that originally existed. His answer alleged that he learned the facts on or about January 1, 1908, and in his testimony he gives the date of such discovery as about May 1, 1908. We conclude that he showed no right to damages on account of the title. But he had the other ground for damages, viz., false representations concerning the land, which, if they existed in fact and induced the contract, constituted ground for rescission and for damages.

In this case both plaintiff and defendant by their pleadings are proceeding upon the theory of rescission, and, in view of the pleadings, it is simply a question of evidence and the application of equitable principles to the facts as they may be found. Plaintiff brought the suit for the land, and defendant has not seen fit to defend under the contract and seek to hold the land. He, as he had the right to do, alleged the nullity of the contract for false representations, and asked for damages accordingly. Therefore, if it should be found that defendant was deceived into making the purchase, he would be entitled to recover of plaintiff the sum he had paid and the value of his improvements as explained in the main opinion. On the other hand, if said issue should be found against defendant, then he would be entitled to recover neither his money paid, nor for his improvements. Moore v. Giesecke, 76 Tex. 551, 13 S. W. 290.

What we have said in the main opinion with regard to defendant not being in a position to complain of the issuance of the writ of sequestration, and of the retaking of possession by plaintiff under the writ, we now think was error.

If it should be determined that plaintiff was guilty of false representations concerning the land inducing the contract, we think plaintiff would have had no right to retake possession by summary process. We adopt what is said in Warvelle on Vendors, § 814: "A vendor will not be permitted to declare a forfeiture as for default where such default is directly attributable to his own bad faith or any fraudulent artifice practiced by him in inducing the sale. Thus, where a vendor falsely asserts and represents, * * * and

the purchaser, relying on such representations, enters and makes payments and improvements on the land, before he learns of the incumbrances, and then refuses to make further payments on the purchase, * * * he cannot be held in default in making payment."

In such case the writ, if illegally sued out, would permit of the recovery of damages, as in ordinary cases, where one sues another in trespass to try title.

The question would arise: Would this be so if it should be found that plaintiff was guilty of no fraud that induced the purchase? It has been distinctly held that where a contract provides that, upon default of a mortgagor, the contract providing that in that event the mortgagor could resume possession of the property, a writ of sequestration accomplished only what the parties had agreed should be done, and there is no liability on account of the suing out of the writ. Nichols v. Paine, 113 S. W. 972, and cases there cited. But we have found no decision which extends the rule beyond cases where the contract expressly provides for taking possession upon default. Therefore we conclude that, although plaintiff could bring his suit in trespass to try title and for possession, and could sue out the writ of sequestration as permitted by statute to all plaintiffs in such case, he did so under the rules and responsibilities which ordinarily accompany such process. Hence we withdraw the conclusion that plaintiff and his sureties could not be liable for damages for the wrongful suing out of the writ in question.

We adhere to the conclusion that the sureties on the bond would not be liable for any abuse of the writ in its execution, not authorized by them.

We do not intend, by what was said in the main opinion, to limit defendant to representations concerning the productivity of the land. Representations which affected the capabilities of the land, and which in their nature were calculated to deceive a person of ordinary prudence, would be available in this respect.

Motion overruled.