# CHARLESTON.

PITTSBURG SPLINT COAL COMPANY v. J. N. SHACKLEFORD *et al.*

Sumbitted April 21, 1920.        Decided May 4, 1920.

1. EQUITY—*Grantor Committing Fraud Upon Grantee Entitled to Little Consideration in Equity.*

   Where a grantor of land, whether by general or special warranty or by quitclaim deed, commits a fraud, actual or legal, upon his grantee, he is entitled to little, if any, consideration in a court of equity. (p. 360).

2. VENDOR AND PURCHASER—*Grantee on Discovery of Grantor's Fraud in Conveying Land ·Previously Conveyed May Have Deed Set Aside.*

   If one who has previously sold and conveyed land, subsequently undertakes to sell and convey it to a third person, he can not justify his fraudulent transaction on the theory of forgetfulness, ignorance, or mistake. In such cases it is his duty to know and tell the truth, and his grantee may, on discovery of the fraud, rightfully elect to have the contract and deed set aside and annulled. (p. 360).

3. SAME—*Grantor Committing Fraud on Grantee Cannot Benefit by Grantee's Subsequent Purchase from Actual Owner.*

   Where a vendor, by general warranty or quitclaim deed, has thus committed fraud on his vendee, he has no right to the benefits of a subsequent purchase of the land by such vendee from the actual owner thereof, nor to profit by such transaction. (p. 360).

   (LYNCH, JUDGE, absent).

Appeal from Circuit Court, Lewis County.

Suit by the Pittsburgh Splint Coal Company against J. N. Shackleford and the Kanawha Union Bank. Decree for plaintiff, and defendant Shackleford appeals.

*Affirmed.*

*R. F. Kidd, B. W. Craddock* and *W. E. R. Byrne,* for appellant.
*Hines & Kelly* and *Haymond & Fox,* for appellee.

MILLER, JUDGE:

Defendant Shackleford obtained this appeal from the decree below of November 12, 1918, which cancelled and annulled the contract between plaintiff and him and the two deeds made by him and his wife pursuant thereto to plaintiff, the first dated April 16, 1917, the second May 1, 1917, whereby they undertook to sell and convey to plaintiff 19.61 acres of coal in Braxton County; and which also cancelled the three notes of plaintiff for $5,000.00 each given Shackleford for the deferred installments of purchase money, and ordered said notes to be surrendered to plaintiff; and which also specifically enjoined and inhibited Shackleford from transferring, assigning, negotiating, collecting or in any manner using said notes; and decreed in favor of plaintiff against the defendant Kanawha Union Bank $1,180.52 with interest, the balance of the cash payment on said coal remaining to the credit of said Shackleford, and against the said Shackleford $1,819.48 with interest, the residue of said cash payment of $3,000.00 drawn out of said bank and expended by him.

The bases of the relief sought and so decreed were that Shackleford had no right or title of any kind to said coal; that on March 31, 1904, he had sold and by deed of that date had conveyed to Henry G. Davis the very same tract of coal, which deed was of record in said county; that Shackleford well knowing or bound to know that he had no right or title to said coal, and falsely representing to plaintiff that he had title thereto and right to sell and convey the same, the plaintiff being ignorant thereof, had perpetrated a fraud upon it for which it was entitled to the relief prayed for.

As in the court below, so here on appeal, appellant relies substantially upon three propositions: *First,* that in entering into said contract and in making said deed, he acted in good faith, honestly believing he had good title to and right to sell and convey said coal; that while he at first thought he had previously sold and conveyed the same to said Davis, he had found among

his papers an undelivered deed to Davis, and the county clerk and an attorney failing to find a recorded deed from him to said Davis, or that the coal so conveyed had been transferred on the land books to his grantee, he had redeemed said coal from the supposed forfeiture thereof to the State for non-entry and non-payment of taxes; and that as his deed to plaintiff was a quit-claim deed, it conveyed only such title as he had, and that no relief could be properly decreed against him: *Second,* that plaintiff did not rely on any representation by him, but itself searched or caused the county records to be examined, without reliance on any representation made by him in respect thereto, and was anxious and willing to purchase such right and title as he had, wherefore plaintiff was entitled to no relief against him: *Third,* that though when called upon by plaintiff about April 18, 1917, before his last and final deed had been actually received by plaintiff, but after the cash payment had been made to and said notes executed and delivered to him, he had declined to surrender said notes or repay the money paid down, he had the right, whether his deed amounted to a general warranty or only to a quitclaim of such right and title as he had, to a reasonable time in which to repurchase said coal from the real owner, and was entitled to the benefits of the purchase thereof made by plaintiff from such owner and to treat the plaintiff as a trustee for him, and to general relief.

It is conceded by counsel on both sides of the controversy that the real question involved and decisive of the rights of the parties, and presented by pleadings and proofs, is whether or not the defendant Shackleford was guilty of actual or legal fraud in the sale and conveyance of said coal to plaintiff. It is ad-mitted that whether Shackleford's deed amounted to a general warranty or only to a quitclaim of such right and title as he had to the coal, if he committed fraud upon plaintiff, the plaintiff is entitled of right to a cancellation of the contract and deeds and to be put in *statu quo,* and that he neither has the right to make good his alleged title, nor to the benefits of plaintiff's purchase from the true owner, nor to any cross-relief against his grantee, sought by him in his cross-answer.

Bearing on the question of actual fraud, defendant admits

that when his attention was first called to this coal and to his possible ownership thereof, his recollection was that he had previously sold it to Davis. It is also admitted and proven that when his deed to Davis was found on the record and that the coal had been actually transferred on the land books, and that all taxes had been paid by Davis and his grantee therein, Shackleford refused to return to plaintiff the notes or to refund the cash payment, insisting that his deed was only a quitclaim of such right and title as he had and that plaintiff ought to be satisfied therewith; that after his attempt to redeem the land from the State, which was done all in one day, he had prepared and had executed by himself and wife, leaving the names of the grantee blank, three deeds, one for the consideration of $12,-000.00, another for the consideration of $15,000.00, and the third, the one temporarily delivered to plaintiff, for $18,000.00, and with these deeds he went to the county seat to dispose of his right and title to the coal, all of which deeds, as he admits, were prepared by him designedly to protect himself if it turned out he had no title to the property. And it is further shown that it was not until about the middle of May, after plaintiff, to protect its interests, had purchased the coal from the West Virginia Coal and Coke Company, the then owner, that Shackleford proposed to purchase the property and claimed the benefits of the purchase made on behalf of said company.

As to whether plaintiff relied on the representation of Shackleford or made an independent investigation of the record, the evidence is somewhat in conflict. Plaintiff's evidence shows that its representative looked only to the record of the immediate deed to Shackleford, as pointed out by him, his undeliverd deed to Davis, which he exhibited as evidence of his ownership of the coal, and to the land books relating to one of the magisterial districts, in which it was supposed the coal would have been taxed to Davis; but that it relied mainly on the representation of Shackleford that he still owned the coal. The fact, if material, on this conflicting evidence, must be regarded as having been resolved by the court in favor of plaintiff, and we can not say it erred therein; indeed we think the evidence fully justified the finding of the court thereon.

The law is well settled that where fraud is practiced, a grantor whether by general warranty or quitclaim only, is entitled to little, if any, respect or favor in a court of equity. *Alvarez* v. *Brannan,* (Cal.), 68 Amer. Dec. 274.

But assuming good faith and honest intentions on the part of Shackleford, the admitted fact remains that long before he undertook to sell and convey this coal to plaintiff, he had sold and conveyed it to Davis and thereby parted with all right and title he had therein. His counsel insist that such rights as he acquired by his redemption of the land, passed to plaintiff by his deed. But what did that amount to? Absolutely nothing. He acquired no rights thereby, and his vendee acquired nothing by his deed. The court below, according to a written opinion filed, put its decree not only on fraud but on mutual mistake. Undoubtedly there was a mistake on the part of plaintiff; but we doubt whether, under the facts proven, Shackleford should be permitted to say he was mistaken. The law will not permit one after having sold and conveyed his property to undertake to sell and convey it to another and then rely on his mistake or a bad memory to excuse his fraud and permit his profit thereby. The law on this subject is well stated by the leading text writers as an exception to the general rule invoked by defendant, as follows: "If a statement of fact, actually untrue, is made by a person who honestly believes it to be true, but under such circumstances that the duty of knowing the truth rests upon him, which, if fulfilled, would have prevented him from making the statement, such misrepresentation may be fraudulent in equity, and the person answerable as for fraud; forgetfulness, ignorance, mistake, cannot avail to overcome the pre-existing duty of knowing and telling the truth." 2 Pom. Eq. Jur. (4th ed.), §888, p. 1839; 1 Story Eq. Jur. (14th ed.), §272, p. 281.

On the theory of mutuality of mistake, one of the grounds adopted by the circuit court, the authorities are equally clear that the contract and deeds were properly set aside and annulled. 1 Story Eq. Jur. (14th ed.), §§211-215; *Fearon Lumber and Veneer Company* v. *Wilson,* 51 W. Va., 30; *Worthington* v. *Staunton,* 16 W. Va. 208, 242.

The remaining question to be considered is, has the defendant

Shackleford right to the benefit of the purchase of the coal made on behalf of the plaintiff company? The rule invoked applies only to vendors with warranty of title. An effort was made by brief and at the hearing by defendant's counsel to shift his original position from that of a quitclaimant to one of warrantor of title so as to be admitted to the right of a warrantor to make good his title. But as previously shown, the rule is inapplicable in all cases where the vendor has been convicted of fraud. Moreover, the rule does not apply where the vendor has nothing to convey and no power whatever to sell. A vendor can not undertake to substitute the contract of a third person for his own, and in no case can he enforce the rule where he has been guilty of fraud. Maupin on Marketable Title, (2nd ed.), §§314, 315. In such cases the purchaser has the right to refuse to have anything more to do with the contract. Fry on Specific Performance, (5th ed.), §1369, p. 665; *Burks* v. *Davies,* (Cal.), 24 Pac. 613; *Woods* v. *North,* (Tenn.), 44 Amer. Dec. 312; *Hall* v. *Cloutz,* (Tex.), 63 S. W. 941, syl. 4.

Finding no reversible error therein, we are constrained to affirm the decree.

*Affirmed.*