**McCLUNG CONST. CO. v. MUNCY et al.**

**No. 4072.**

Court of Civil Appeals of Texas. Amarillo.

Nov. 29, 1933.

Rehearing Denied Nov. 29, 1933.

Cantey, Hanger & McMahon, of Fort Worth, and Simpson, Dorenfield, Foster & Fullingim, of Amarillo, for appellant.

Works & Bassett, of Amarillo, for appellees.

HALL, Chief Justice.

The partnership of D. J. Muncy & Sons, composed of D. J., T. E., and D. J. Muncy, Jr., sued the appellant construction company, alleging: That they entered into a written contract with the company in virtue of which they undertook to do certain construction work on bridges in Childress county. That the company had a contract with the state highway department for the construction of the bridges. That plaintiffs' contract provided for the placing of 1,432 lineal feet of concrete piling, the work to be done in accordance with the plans, specifications, and terms of the company's contract with the state of Texas. That plaintiffs were to receive as compensation $3 per lineal foot of holes drilled in the earth and materials other than solid rock and $5 per lineal foot of holes drilled in the solid rock. That they were to begin on August 20, 1929, and complete the work in forty working days. That they were induced to enter into the contract through false and fraudulent material representations made to and relied upon by them, to their damage. That the defendant represented, through E. W. Gray, its agent, that thorough testings and soundings had been made by defendant of the soil and materials to be penetrated in drilling holes for the concrete piles, except as to one bent of the bridge at the north end. That such testings and soundings showed that for the forty-two piles no rock would be encountered except 5 feet in bents 6, 7, 8, 9 and 10. That Gray further represented that there was no boulder formation, or soil mixed with rocks, in the ground where the holes were to be drilled for the piles, and that the piles which had already been cast would pass through a 20-inch casing. That all of said holes were required to be made by drilling. That plaintiffs' contract with defendant was the same as defendant's contract with the state, in so far as the work required to be done under plaintiffs' contract was concerned.

Plaintiffs further alleged: That in truth and in fact the formations penetrated were not as represented by Gray, in that the solid rock was encountered on an average of 5 feet closer to the surface of the ground than as represented by Gray and that there was a boulder formation or soil mixed with rocks all over the ground and in practically every place where a hole was to be drilled for placing piles; this formation being reached at an average depth of 7 feet in some places and 3½ feet in others, extending down to the solid rock, boulders being of various sizes. That the piles would not pass through the 20-inch casing, but a 24-inch casing was required. That the piles in the first five bents had to be driven without drilling, and that such was the requirement of the defendant's contract with the state highway commission. That, in order to prepare for the work as represented by Gray, plaintiffs equipped themselves with the necessary machinery, tools, etc., placing the same on the ground, and did not discover that the character of the work to be done was materially different from that represented until after the work was begun. That this information was not obtained by them until the work was actually being done, and that, in order to do the work which was required properly, other and different equipment must be used, larger holes drilled, and the first five bents driven for the piles to be placed therein. That they were required to provide themselves with a pile-driving outfit which, after trying and testing, it was found the work could not be done by that method, as decided by the engineers in charge. That plaintiffs then further changed their equipment and provided a spudder drilling outfit, which was not required under the representations made to them by Gray. That this resulted in further delay, causing heavy additional expense and losses, and it was found that 24-inch casing must be provided for use in setting said piles.

They charge that the representations made by Gray were false and fraudulent, that they did not know of their falsity, but believed them to be true, and relied and acted thereon, and but for such representations they would not have entered into the contract; that the false statements were made for the purpose of inducing them to enter into the contract and they were induced to do so by said statements.

The damages alleged are: First, $1,500 resulting from the changes in equipment required for doing the work entirely different from and in addition to that contracted to be done with loss of time, labor, expense, transportation charges, damages to equipment, etc. Second, $1,500 loss of profits which plaintiffs would have realized if the work had been done as contracted under the representations made to them. Third, $2,000 for loss of time and loss of other work and jobs that could have been secured and performed by them with the use of said equipment which was tied up for about five months. Fourth, $4,000 less a payment of $692.55 for the actual value of the work done by them under the conditions which existed.

The defendant answered pleading specially: That it entered into a written contract

with the state highway commission to do certain bridge work in Childress county and thereafter sublet to the Muncys the placing of approximately 1,432 lineal feet of concrete piling on the bridge in question. That the contract provided that plaintiffs should begin work on or before August 20th and complete the same within forty working days from that date. That plaintiffs, being unable to complete the contract within that time, subsequently requested defendant to grant them an extension of twenty days from October 16th in which to complete the work. The extension was granted by supplemental contract. That, at the time of the execution of the contract, the plaintiffs, as principals, and the United States Fidelity & Guaranty Company, as surety, executed a bond payable to defendant in the penal sum of $3,000, conditioned that plaintiffs should perform their contract. Defendant further denied that any agent authorized to represent it had made any statements or representations to plaintiffs upon which they based their bid, and pleaded: That plaintiffs were afforded and had available to them the same means for determining the kind and character of soils to be penetrated as did the defendant. That it furnished plaintiffs with all the information it had as to the formation and soil to be penetrated, and a complete copy of its contract with the state of Texas was always in the hands of the resident engineer of Childress county. That it was impossible for the defendant to furnish plaintiffs any accurate information with reference to the work to be encountered in placing the piles. That, if any representations were made by any of its agents, the same only approximated the conditions and estimates and were not calculated to be and could not constitute matters of fact as to conditions to be encountered. That defendant was under no obligation or duty to inform plaintiffs of the exact number of feet of rock and other formations to be penetrated. That the contract was to pay plaintiffs a specified amount per foot for each foot of rock encountered and a specified amount per foot for each foot drilled into the soil, which it did pay in accordance with the terms of its contract. That it was not responsible for the manner in which plaintiffs performed their contract nor for the changes in the way and manner in which plaintiffs' work was carried out. That, if any changes were required, they were required by the state highway department and its engineer in charge of the work, over whom defendant had no control and for whose acts they were not responsible. That plaintiffs were unable to carry out their contract on time and were granted an extension and were even then not able to and never did perform their duties under the contract. That after continued delays they finally abandoned the work, and it became necessary for the guaranty company to take over the contract and complete its performance. That, as a result of the delays on the part of plaintiffs and their inability to perform, defendant incurred a penalty of $350 by the state, which was pleaded as an offset against plaintiffs' cause of action. That, during the time in which plaintiffs were attempting to perform their contract, they incurred labor and material bills in excess of $600 which were not paid by plaintiffs and which defendant under its contract with the state was rendered liable for. This amount was also pleaded as an offset. Defendant further alleged that it was authorized under the contract to retain an amount equal to 10 per cent. of each monthly estimate until the highway department had accepted the work for payment, and it was provided that, in the event plaintiffs did not carry out their contract, the defendant should hold any other amount due or to become due to plaintiffs as damages.

There were other facts pleaded which have no bearing upon the issues submitted here, and they will not be set out.

The case was submitted to the jury upon special issues and based upon the verdict the court rendered a judgment in plaintiffs' favor for the sum of $3,858.45, made up of the following items: $1,891 for work actually done by plaintiffs at the contract price; $400 as a reasonable and necessary cost of providing additional machinery; $800 for extra time devoted to the work by plaintiffs D. J. and T. E. Muncy over and above the time which would have been required if the work had been as represented; $1,460 as the difference between the contract price of $2,960 and the $1,500 that the jury found it would have cost plaintiffs to do the work required of them if conditions had been as represented—all of these less a credit received by plaintiffs of $692.55

The issues submitted to the jury, briefly stated, were whether it was represented to plaintiffs that there were no boulder formations in the ground, whether the piles required to be placed would pass through a 20-inch casing, and whether all the piles in question were to be set in holes drilled large enough to receive the piles without driving. The jury answered these issues in the affirmative, and in addition found as to each representation that it was untrue; that it was believed by the Muncys; that they were made to induce the plaintiffs to enter into the contract; that the Muncys relied upon the representations and would not have entered into the contract had they known that the representations were untrue.

■ The appellant requested a special issue with reference to each of the representations inquiring of the jury whether such representation was of a material fact. These special issues were refused by the court, and such action is the basis for the first three propositions urged by the appellant.

It is said in 20 Tex. Jur. 37, that a material representation is one that relates to the condition, kind, and quality of the property at the time described and which is believed and relied on by the persons to whom it is made and which moves and induces them to act in a manner that they would not have acted had such representations not been made. To the same effect is 12 R. C. L. 299 § 61; 26 C. J. 1104.

One of the plaintiffs, D. J. Muncy, testified that he relied on the representations made by Gray and believed them to be true as represented, and this question was asked: "Would you have entered into the contract had you not so believed?" He answered: "No, sir, not at that price." Plaintiffs' subsequent conduct sustains this testimony. Believing that the formation was free from boulders, they installed a rotary rig, which could not be used in drilling holes where there were boulders in the soil. They then at considerable expense were forced to change to a different type of machine, which the witness calls a "spud-in" machine, and later under the advice of Bacon, the state engineer, they were ordered to drive the piles and, in preparing to do this, incurred other unexpected expense. It is conceded that, if the soil in the bed of the creek had been free from boulders and only gyp rock to be drilled, the extraordinary expense incurred by the Muncys would not have been incurred. There is no testimony which tends in any degree to contradict these facts or to show that the representations were not material, and, where the testimony is uncontradicted upon any issue, the court is not required to submit it to the jury. 20 Tex. Jur. 174 § 119; Western Cottage Piano & Organ Co. v. Anderson, 45 Tex. Civ. App. 513, 101 S. W. 1061; Bevil et al. v. Kirby Lumber Co. (Tex. Civ. App.) 58 S.W.(2d) 843. We therefore overrule these contentions.

■■ By three special issues the appellant requested the court to submit to the jury whether they believed from the preponderance of the evidence that the representations inquired about in the court's special issues Nos. 1, 2, and 3, were made by Gray and understood by the plaintiffs as a statement of opinion on the part of Gray. The appellant requested the court to give three more special issues inquiring with reference to the court's special issues Nos. 1, 2, and 3 whether the jury believed that the representations made by Gray were so made and understood by plaintiffs as an estimate by Gray, and by three more similar issues defendant requested the court to submit to the jury whether they believed that the representations made by Gray were the statement of his judgment as to the matters stated.

It would not have been necessary for the court to have submitted all nine of these requested special issues, because a statement of Gray's opinion would have been a statement of his estimate and judgment with reference to the matters stated. In other words, opinion, estimate, and judgment were synonymous terms; but we think the court erred in refusing to submit one each of the three sets of issues requested.

■ The first issue, as hereinbefore stated, submitted to the jury the question as to whether Gray represented that there were no boulders to be encountered in the bed of the creek in the prosecution of the work to be done by plaintiffs. The defendant denied that Gray made any such representations, and specially alleged that, if they were made, they constituted only an expression of his opinion or an approximation and were not a statement of a fact. Gray testified: That the information he furnished plaintiff was the log made by the state of Texas, as shown in the blueprint which he exhibited to plaintiffs. That in addition thereto he had another party to drill ten holes, 4 inches in diameter, one hole to each bent, and he furnished plaintiffs the result of such tests. That he was not on hand when the test holes were made and so informed plaintiffs. Gray testified: That Muncy told him he (Muncy) had been over the job and had figured it and had seen one of the blueprints before. That Muncy knew there were gyp boulders there. That some of them were in sight, lying about 15 feet up the stream from the bridge site and others below the bridge site. That Muncy measured the ends of the piles himself. Even if there are contradictory statements in Gray's testimony, the jury could believe part and reject part as they saw fit. Pritchard Rice Milling Co. v. Ellis (Tex. Civ. App.) 266 S. W. 233; Herd v. Wade (Tex. Civ. App.) 63 S.W. (2d) 253; Texas Employers' Ins. Ass'n v. Herron (Tex. Civ. App.) 29 S.W.(2d) 524. It was shown that Gray was not a driller and had never had a drilling job before, and plaintiffs did not contend that Gray represented to them that he had any practical knowledge of drilling. With reference to the size of the casing required, upon the testimony introduced, the jury might have found that Gray's statements were each the expression of an opinion. The same is true with reference to the third issue inquiring whether Gray stated that no piles would have to be driven. Gray testified that he had about ten holes dug, each 4 inches in diameter, one hole to the bent, and the driller reported that some gyp rocks were found. It is a matter of common knowledge that the beds of streams in this part of the state are a mixture of coarse sand and boulders of flint, gyp, and sandstone. Then how could Gray know that the boulders were or were not to be found just where the piles were to be set in the bed of the creek? Buckingham v. Thompson (Tex. Civ. App.) 135 S. W. 652; Putman v. Bromwell, 73 Tex. 465, 11 S. W. 491; Mueller v. Thomas (Tex. Civ. App.) 55 S.W.(2d) 167;

Stringfellow v. Brazelton (Tex. Civ. App.) 142 S. W. 937.

■ "Whether representations were such as the plaintiff had the right to rely on, or whether they were of a character reasonably calculated to deceive such a person as he was * * * or whether a fraud had been committed or whether the representations were such as should have been relied upon. And so * * * whether the representations were statements of fact" are questions for the jury. Smith on Fraud, § 280. The general rule is that whether a representation is a statement of fact or the expression of an opinion, and also as to the existence of a fraudulent intent, are questions for the jury. 27 C. J. 74, 75; 12 R. C. L. 446, 447. There is nothing in this case which takes it out of the general rule. Whether Gray's statements were merely expressions of opinion or statements of facts were vital issues in the case raised by the appellant's pleading and evidence, and it was clearly entitled to have them submitted. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Id. (Tex. Civ. App.) 196 S. W. 647; Montrief & Montrief v. Bragg (Tex. Com. App.) 2 S.W.(2d) 276.

■ By the seventh assignment appellant contends that the court erred in refusing its requested special issue inquiring whether the plaintiffs were in possession of as much information as E. W. Gray with reference to the nature of the structure and formations of the soil to be penetrated at the time they entered into their contract with the defendant.

We cannot assent to this proposition. It is too uncertain and indistinct to form the basis for a judgment if answered either in the affirmative or the negative. It is a contested question as to what information and knowledge Gray had, as well as to the extent of the information that the plaintiffs had, and, unless other issues had been submitted, in response to which the jury found the extent of plaintiffs' information and of Gray's information, the answer to the proposed interrogatory would have been of no value or assistance to the court in rendering a judgment, whether answered in the affirmative or the negative.

■ The appellees insist that the court was justified in not submitting practically all of the special issues requested by appellant, because of the want of pleadings raising the issues.

In Speer's Law of Special Issues, § 191, p. 247 et seq., in discussing the necessity of submitting an issue both in the affirmative and negative form, the author says that it frequently happens that the affirmative submission of the plaintiff's case by necessary implication negatives the defensive issue, but this does not prevent the defendant's right to have his proper issues affirmatively submitted, and

this right to an affirmative submission is not limited to those defensive issues which are affirmatively pleaded. One of the cases cited is Galveston, H. & S. A. Ry. Co. v. Wilson (Tex. Civ. App.) 214 S. W. 773, 775, in which it is said: "That a litigant is entitled to have his defense or cause of action affirmatively submitted, and that a defendant's general denial is sufficient to require the submission of any defensive issue raised by the evidence, which is not required by statute or rules of pleading to be specially pleaded, has been decided many times by our Supreme Court."

■ The eighth proposition is that, because defendant defended in part upon the ground that plaintiffs' failure to perform their contract was due to the insufficiency of their machinery and equipment, it was entitled to have the court submit to the jury this issue: "Do you find and believe from the preponderance of the evidence that the plaintiffs were sufficiently equipped to perform their contract, if the representations, if any, made by Gray had been true?"

There is some evidence in the record which raised the issue requested, and, while the appellant did not plead that appellees were not sufficiently equipped to perform their contract, even though the representations made by Gray, if any, had been true, they were entitled under the general issue to prove that the failure of appellees to perform the contract according to its terms was not due in whole or in part to the fraudulent representations alleged to have been made by Gray, but that such failure resulted from other causes not chargeable to appellant or its representatives, even without pleading it.

In Good v. Chiles (Tex. Com. App.) 57 S.W.(2d) 1100, 1101, it appears that Good offered to sell certain shares of stock to Chiles for $1,200, and that the latter accepted the offer, but refused to accept the stock when it was tendered by Good. Suit was filed, and Chiles answered by general denial. The testimony showed without contradiction that Chiles had agreed to take the stock at $1,200. Chiles offered to prove that the offer to sell the stock was made in jest and was accepted by the defendant in the same spirit; that both parties were joking. This testimony was excluded by the trial judge, and a verdict in behalf of Good was directed by the court. Chiles contended that his offer to prove that the agreement to sell and purchase was a joke was admissible under his plea of general denial. The Commission of Appeals said: "This contention is overruled. The settled rule in this state is to the effect that, under his plea of general denial, a defendant may introduce any testimony which goes to disprove the facts alleged and proved by the plaintiff, but cannot avoid the legal consequences of such facts, unless he plead the matters in avoidance upon which he relies. Moody & Co. v.

Rowland, 100 Tex. 363, 99 S. W. 1112; Smothers v. Field, 65 Tex. 435. In the present instance, the plaintiff alleged and proved the fact of an offer by him to sell to the defendant the shares of stock for $1,200, and the fact of an acceptance of that offer by the defendant. The legal effect of these acts of offer and acceptance, unless avoided in some way, was to create a contract. The proposed testimony did not tend to show that the acts of offer and acceptance did not occur. It could have no bearing on the plaintiff's case, except to avoid the legal consequences of those acts. There was no basis in the pleadings for the introduction of this testimony."

The proof introduced by the appellant which showed that the work which should have been commenced on or before August 20th and completed within forty working days and at the end of that time plaintiffs had not completed the work and had not performed any substantial part thereof, and on October 16th were granted an extension of twenty days' time in which to complete the work, and the testimony which further showed that T. E. Muncy did not go on the job until October 2d, that the first hole was drilled about October 5th, and on February 1, 1930, only twenty-eight out of forty-eight piles had been placed, tends strongly to show that plaintiffs were not properly equipped and prepared to perform the obligations imposed upon them by the contract. If they could not and did not complete the work because of a want of preparation on their part and of the need of proper equipment and this was the cause of the delay, the fact that Gray induced them to enter into the contract by fraudulent representations would be no ground for recovery, unless they had sustained pecuniary damage by reason of having been put in a worse position as a result of the fraud. 26 C. J. 1166, note 68. The writer thinks the court erred in refusing the issue.

The majority of this court is of the opinion that the above-quoted special issue is somewhat confusing and ambiguous, and that, standing alone, in the language into which it has been cast, constituted no defense to plaintiffs' cause of action. Justices JACKSON and MARTIN are of the opinion that the real issue was the readiness, ability, and willingness of appellees to perform the contract if Gray's alleged representations had been true, and that the quoted special issue was so framed as to preclude a recovery if answered affirmatively, though the appellees may have been ready, able, and willing to properly equip themselves to perform the contract. Otherwise stated, such issue seems to have been phrased so as to make the mere lack of the physical possession of equipment a defense, which would ignore all evidence that appellees were amply able and willing to provide themselves with proper equipment. If they were able to provide themselves with such equipment, and willing to do so, it is immaterial that they were not in physical possession of same prior to or at the time of the alleged misrepresentations. 55 C. J. 320; Del Curto v. Billingsley (Tex. Civ. App.) 169 S. W. 393. They further believe that, while same may have been sufficient to call the court's attention to the error so as to require a correct charge, the failure to give a correct charge cannot be considered because no error is assigned in this court questioning the court's actions in this particular, this because the statute requires a specification of error. There is a difference between an assignment of error questioning the refusal of the court to give an incorrect charge and one complaining of his failure to give a correct one. Gulf Production Co. v. Gibson (Tex. Civ. App.) 234 S. W. 906. The majority is therefore of the opinion that appellant's eighth proposition fails to present reversible error.

Under the ninth proposition it is insisted that the court erred in not submitting this issue to the jury: "You will answer the following questions: (a) Prior to the time the plaintiff Muncy signed the contract in question, did the plaintiff see the precast piling in question? (b) Prior to the time he signed the contract did he measure the precast piling in question?"

The answer to these interrogatories would have been upon an evidentiary matter, and bore remotely upon the right of Muncy to rely upon the representations made. We think the rule announced in 20 Tex. Jur. § 30, p. 52, as follows, is correct: "It is not necessary in order to avoid a contract on the ground of fraud that such fraud should have been the sole cause of making the same. It is sufficient that the fraudulent representation is relied upon to the extent that it was a material factor in inducing the making of the contract and without which the same would not have been made."

The rule is differently stated in Graves v. Haynes, 231 S. W. 383, 386, by the Commission of Appeals, as follows: "If defendant in error believed such representations and relied on them and would not have purchased the cattle if they had not been made, he would not be denied his action, even though he did not rely solely on such representations, but relied in part on what he saw when he inspected the cattle." Citing Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900. See, also, Hoyt et al. v. First National Bank (Tex. Civ. App.) 247 S. W. 637.

If we are correct in holding that this rule applies, then a finding by the jury in response to the requested issues that the plaintiff did see the piling in question and measure it prior to the time he signed the contract would not

be a complete defense if he relied in part upon Gray's representations and was influenced thereby.

██ The court did not err in refusing to peremptorily instruct the jury for either party.

What we have heretofore said disposes of the twelfth proposition.

██ The appellant objected to subdivision (a) of special issue No. 3 because the representation alleged was "that all holes were to be drilled, such was plaintiffs' understanding and such was the work actually performed by plaintiffs, hence there was no misrepresentation."

Appellants further objected that, because the contract provided for the drilling of holes, driving or placing of concrete piles in the holes to the satisfaction of the engineer in charge, the alleged representation was merely a statement of obligations actually assumed by plaintiffs, and therefore such representations could not be the basis of actionable fraud.

We do not assent to this proposition. The testimony is sufficient to show that plaintiffs first thought that the work could be done with a rotary drilling outfit and were led into that belief by Gray's representations, and later found out that, on account of the boulders in the bed of the creek, the rotary drill would not work. Muncy testified positively that he would not have signed the contract for the price stated if he had not believed that Gray's representations were true.

██ By proposition 14 the appellant attacks special issues 4(a), 4(b), 5(a), 6(a), and 6(b), because each of said issues contained this language, " * * * if the representations, if any, made by E. W. Gray had been true."

A charge must be construed as a whole, and the court had made it clear to the jury in submitting these subdivisions that answers thereto should be made only in the event that they found one or more of the representations previously set forth had been made and also found the representation to be untrue. When so framed, the issue was not objectionable as being on the weight of the evidence or as assuming facts. Texas Indemnity Ins. Co. v. Wingo (Tex. Civ. App.) 47 S.W.(2d) 397; Hamon et al. v. Sanderford (Tex. Civ. App.) 28 S.W.(2d) 861; Davis v. Christensen (Tex. Civ. App.) 247 S. W. 303; Proctor et al. v. Cisco & N. E. Ry. Co. (Tex. Com. App.) 277 S. W. 1047.

██ The appellant complains that by the submission of special issues 4(b), 5(b), and 6(c), which inquired of the jury as to what would have been the cost to plaintiffs of doing the work required of them if Gray's representations had been true and how much it reasonably and necessarily cost plaintiffs to provide additional machinery, tools, and equipment necessary to do the work under the conditions as they existed, and by the last issue instructed the jury to find the value of time required by plaintiffs over and above that which would have been required if Gray's representations had been true, permitted a double recovery, in that under each question plaintiffs were permitted to recover for the loss of time for delays caused by defendant's misrepresentations.

This objection to the charge is hypercritical, and the jury could not have been misled because issue No. 6(c) only authorized them to find the value of time lost by plaintiffs, if any, by reason of Gray's alleged misrepresentations. Lost time and additional expense were recoverable as separate items. 17 C. J. 780, 854, 914; 13 Tex. Jur. 187, 192. In view of another trial and in this connection, we suggest that the damages awarded are not in all things the damages claimed in the petition.

██ The court permitted D. J. Muncy, over appellant's objection, to testify as follows: "Q. What happened after you went to work? A. Mr. Bacon asked what those holes were and we told him they were conductor pipe holes to drill those holes. So that the jury might understand more fully, we began at the north end, and he said: 'Those first five bents have to be driven and not drilled.' " The objection to the testimony was that Bacon was engineer for the state highway commission, charged with the duty of enforcing satisfactory performance on the part of the construction company, and that any statements or requirements on his part could not be binding upon or chargeable against the construction company, and that such statements constituted hearsay. The contract between the construction company and the state highway commission was made a part of the contract sued on herein, and, by both contracts, Bacon, the state engineer, must be satisfied by whatever work was done. The two contracts must be construed together, and any statements made by Bacon with reference to the work were clearly admissible as res gestæ. Capitol Hotel Co. v. Rittenberry (Tex. Civ. App.) 41 S.W.(2d) 697; 17 Tex. Jur. 614, § 257.

We think the court erred in permitting T. E. Muncy to testify with reference to the conductor pipe holes, and in giving plaintiffs a judgment for compensation for so doing. But appellees have entered a remittitur in this court of this item of the judgment.

This disposes of the seventeenth proposition also.

██ By proposition 19 the appellant complains of the court excluding certain exhibits offered by defendant for the purpose of showing that the indebtedness incurred by the Muncys and evidenced by the exhibits for la-

bor and material bills by plaintiffs were due and unpaid. These exhibits were. offered for the purpose of showing that the items and amounts represented amounts due for labor and material which the plaintiffs owed and which had not been paid. Plaintiffs had approved the bills. One of the provisions of the defendant's bond made to the state of Texas was that the defendant should "pay all lawful claims for labor performed and material furnished in and about the construction of said road and bridge." In plaintiffs' contract with defendant, this stipulation appears: "It is further understood and agreed that party of the first part may retain and is authorized to retain an amount equal to ten per cent of each monthly estimate until final acceptance for payment is made by the State Highway Department of Texas, provided that if said contract is not carried out by party of the second part, said retainage and any other amounts due or to become due party of the second part shall be held to secure first party's damage." This proposition is sustained.

█ We sustain the twentieth proposition because, as we understand the contract, the plaintiffs were not entitled to compensation for drilling holes in which no piling was set. No issue was submitted to the jury, nor was there any request for such submission, and, even if it could be held that plaintiffs were entitled to recover, the issue has been waived.

For the reasons stated, the judgment is reversed, and the cause remanded.