## OWEN v. KING.
No. 4433.

Court of Civil Appeals of Texas. Amarillo.
June 3, 1935.

Rehearing Denied July 1, 1935.

Underwood, Johnson, Dooley & Huff, of Amarillo, for appellant.

· Monning & Akin, of Amarillo, for appellee.

HALL, Chief Justice.

Prior to February 1, 1931, Carl L. King, the appellee, and G. C. Owen, appellant, were engaged in the implement business in the town of Keyes, Cimarron county, Okl., under the firm name and style of "O. K. Implement Company." On or about the 17th day of February, 1931, J. W. Jenkins executed his two notes, payable to King, in the principal sum of $750 each, due on or before August 1, 1931, and January 1, 1932, respectively. The notes were made payable to appellee, King, at Amarillo, Tex., and provided for interest at 10 per cent. and 10 per cent. attorney's fees if placed in the hands of an attorney for collection. Default was made in the payment of the notes, and King filed this suit against J. W. Jenkins and G. C. Owen, alleging further that the notes were executed as a part of the consideration for a conveyance from King to Jenkins of all the former's undivided interest in certain personal property located in Cimarron county, Okl., consisting of cattle, tractors, farm equipment, and all machinery, repairs, accessories, and fixtures located in the place of business known as the O. K. Implement Company in the town of Keyes, Okl., together with the outstanding notes and open accounts due the partnership theretofore existing between King and Owen, and including an undivided one-half interest in said business in said O. K. Implement Company, together with the good will; that as a further consideration for the conveyance Jenkins assumed all outstanding indebtedness of the partnership of Owen and King. Plaintiff further alleged that Owen was in fact the real purchaser as the undisclosed principal of J. W. Jenkins, and that such transaction constituted a full and final settlement and accounting of the partnership affairs between King and Owen; that in the spring or summer of 1931 the defendant Jenkins executed a written bill of sale, conveying the above-described property to the defendant Owen, in which bill of sale Owen, as a part of the consideration for the transaction, assumed payment of, and agreed to pay, the two notes for $750 heretofore referred to. Notice was given defendants to produce said bill of sale. Plaintiff further alleged that, if the bill of sale failed to disclose that Owen assumed the payment of the notes, it did not reflect the entire agreement between the parties, and sought to have the contract reformed so that it would show that the defendant Owen had assumed the payment of the notes executed by Jenkins to Carl L. King. An exception was sustained to this paragraph of plaintiff's petition, and the allegation was stricken.

King alleged in the alternative that, if he is mistaken in charging that Owen assumed the payment of the notes executed by Jenkins in writing, then he alleges that Owen verbally agreed with the defendant Jenkins to assume the payment of the notes, and that such agreement to assume was made before the notes were executed by Jenkins and subject to his execution of the same; that, by defendant's false representations, Jenkins had purchased King's interest in the business for himself and with his own money, and by an alleged bogus transaction of having Jenkins give Owen a check for the amount of a note for $1,155.50 which King owed Owen, and by representing that Jenkins was paying, out of his own money, the balance of the cash agreed to be paid in the sale between King and Jenkins, and, by delivering the executed bill of sale from Jenkins to Owen, and by having the defendant Jenkins work in said business as an employee, the defendant actively, affirmatively, and positively concealed from plain-

tiff the fact that the defendant Owen had agreed to pay and assume the payment of the notes, and that the plaintiff had a cause of action against the defendant Owen on such assumption to pay said notes; that plaintiff, though exercising reasonable diligence, did not discover that he had a cause of action against defendant Owen on his assumption to pay the notes until the month of December, 1933, at which time the defendant Jenkins disclosed such facts to plaintiff, and after which discovery plaintiff filed this suit. Plaintiff further alleges that he placed the notes in the hands of Monning & Akin for collection, and has agreed to pay them the 10 per cent. attorney's fees stipulated in said notes, and that the same was reasonable and customary, that the notes were past due and unpaid, and, though often requested, defendants had failed and refused to pay the same, except certain payments made during the month of September, 1931, aggregating $120.

It is further alleged that as security for the payment of the notes the defendant Jenkins had executed and delivered to the plaintiff, King, a chattel mortgage on the above-described property, located in Cimarron county, Okl., beyond the jurisdiction of this court, and that this action was brought in the state of Texas without prejudice to whatsoever remedies plaintiff might have in the state of Oklahoma for the enforcement of his mortgage lien.

In the alternative plaintiff alleged as follows:

"If, for any reason, it should be held that said defendant Owen is not liable on said notes, then in the alternative plaintiff alleges that on or about the month of December, 1930 the defendants, at the instigation of said Owen, conspired together to purchase plaintiff's one-half interest in said property in the name of J. W. Jenkins, but in fact for the benefit of said Owen, with the view of purchasing it much cheaper in the name of Jenkins than said Owen could otherwise purchase it from plaintiff; that thereafter, on or about February 17, 1931, such purchase was completed by the said Jenkins, acting at the request, for the benefit and as the agent of G. C. Owen, the plaintiff acting in said transaction by and through his duly authorized attorney in fact, Benton King, such sale being made at the agreed price of $3,000.00, $1,500.00 of which was paid in cash, less the balance due on a note for $1,155.50 which plaintiff had given defendant Owen which was cancelled, and a balance of $1,500.00 was to be paid in two installments of $750.00 each, falling due on August 1, 1931 and January 1, 1932, respectively, such deferred payments to bear interest from January 17, 1931 at the rate of ten per cent per annum, and the debtor was to pay all costs of collection, including ten per cent on the principal and interest for attorney's fees, if placed in the hands of an attorney for collection; that the connection of defendant Owen with said transaction was not disclosed, he being the undisclosed principal of such transaction, but on the contrary his connection with the transaction was carefully and purposely concealed by active artifices and positive affirmative acts on the part of defendants in that they falsely informed plaintiff's said attorney in fact that said Jenkins was in fact purchasing the same for himself and that said Jenkins gave said Owen a check to pay said $1,155.50 note, which check was a bogus transaction and was not presented nor intended to be presented for payment, but was torn up by the said Owen when they got out of the presence of plaintiff's said attorney in fact. They had said Jenkins give plaintiff's said attorney in fact a check on a Lubbock bank for the balance of the $1,500.00 payment, after deducting the check given to Owen in pretended payment of said note when said Jenkins did not have any money in said bank, but with the understanding only, unknown to plaintiff, that Owen was to furnish the money to cover the check, which he did after plaintiff's said attorney in fact had left, by check on the Amarillo National Bank, which defendant Jenkins took to Stratford on a special trip for that purpose, after plaintiff's said attorney in fact had left, and mailed to Lubbock for deposit to his account in order to have the funds on hand to take care of his check to plaintiff when it should be presented. That due to said concealment on the part of defendants, plaintiff had no way of finding out and no avenue of discovery that defendant Owen was in fact the purchaser, as defendants themselves were the only two persons who knew of the real transaction, and they concealed same from plaintiff as aforesaid. That due to such concealment and lack of any means of discovering the true facts, plaintiff did not know and by the exercise of reasonable diligence could not and did not

find out that the defendant Owen was the undisclosed principal in said transaction who was in fact furnishing the money, buying the business, and who agreed to pay the deferred payments of $1,500.00 with interest and attorney's fees as aforesaid, until on or about the month of December, 1933, at which time he was pressing the said Jenkins for the payment of said notes and the said Jenkins informed him of such facts and plaintiff then, for the first time, learned that he had a cause of action against defendant Owen for the deferred balance of the agreed purchase price of said property, that the said Jenkins purchased the same for the said Owen, at the instance and request of the said Owen, with the full knowledge and consent and at the instigation and in the presence of the said Owen, who immediately took complete charge of said business, and for said Jenkins' services in purchasing same for him paid said Jenkins $125.00 and employed him to work in said business, not as a partner or as owning any interest in said business, but simply as an employee, and after some delay in order to avoid any suspicion on plaintiff's part, said Jenkins thereafter gave said Owen a bill of sale to said property in order to carry out the agreement, intention and design that said Jenkins was simply purchasing same in his own name for the sole benefit of said Owen, and the said Owen in all things accepted the benefits of the services of said agent and thereby in all things ratified and confirmed the acts of said agent, and is now estopped to deny the authority of said agent to make such agreement.

"That by such false representations as to the identity of the real purchaser, which plaintiff believed and on which he relied to his detriment and by said affirmative acts of concealment, the defendant Owen perpetrated a fraud upon plaintiff which plaintiff did not, in the exercise of due diligence, discover until on or about the month of December, 1933 as aforesaid, thereby damaging plaintiff as hereinafter set out.

"That by reason of the fact that said Jenkins purchased said property for his undisclosed principal, Owen, upon terms authorized and ratified by said Owen, and by reason of such fraud perpetrated upon plaintiff by said Owen, the defendant Owen became liable and bound and promised plaintiff to pay him the agreed sum of $3,000.00 for said property, $1,500.00 of which Owen did pay by furnishing the cash and cancelling plaintiff's note to him as aforesaid, leaving unpaid the agreed balance of $1,500.00 which was to bear interest from February 17, 1931 at the rate of 10 per cent per annum and all costs of collection, including 10 per cent attorney's fees if placed in the hands of an attorney for collection, $750.00 of which was due August 1, 1931 and $750.00 on January 1, 1932, but defendant Owen, though often requested, has hitherto failed and refused to pay the same, or any part thereof, except $80.00 paid September 26, 1931, and $40.00 paid September 28, 1931, and plaintiff has been forced to place the balance of said indebtedness in the hands of his attorneys for collection, and has agreed to pay them the ten per cent attorney's fees contracted for, the same being reasonable and the usual and customary fee, all to plaintiff's great damage in the unpaid principal, interest and attorney's fees on said $1,500.00 obligation."

The prayer is for judgment for the balance due on the note sued on, principal, interest, and attorney's fees, against the defendants Jenkins and Owen, jointly and severally, or, in the alternative, for judgment against the defendant G. C. Owen, for his debt and damages in the sum of the unpaid balance on said $1,500 deferred payment, principal, interest, and attorney's fees, and for such other and further relief, special and general, in law and in equity, to which he may be justly entitled.

The defendant Jenkins entered his appearance.

Defendant Owen's answer consisted of a plea in abatement upon the ground that there had been no accounting between Owen and Jenkins who had been partners in the business known as the O. K. Implement Company. After a general demurrer and several special exceptions and a general denial, Owen specially denied that the notes sued upon were executed by him or by his authority; denied that he assumed the payment of the notes, that he had perpetrated any fraud upon Jenkins or King or had induced Jenkins to sign and execute the contract between Jenkins and Owen for the transfer of the interest of Jenkins in the O. K. Implement Company. Owen further denied that he ever verbally or in writing agreed to pay the notes executed by Jenkins to King, or that

he concealed, by any bogus transaction or otherwise, that he had assumed the notes, and specially pleaded that he did not assume the payment of them. He denied that he conspired with Jenkins to purchase the interest of King, and further denied that he was the undisclosed principal of Jenkins, alleging that Jenkins purchased the property in his own name and for his own use and benefit. He alleged that during the year 1928 he and the plaintiff, King, entered into a partnership agreement, by the terms of which they were to be equal partners engaged in the implement business at Keyes, Okl., under the firm name of O. K. Implement Company; that from the time of the formation of the partnership until it was terminated on or about November 30, 1930, no final settlement or accounting was had between them; that thereafter, in February, 1931, King conveyed his one-half interest in the partnership property to Jenkins, and from the date of the conveyance there was no continuing partnership between King and Owen. He alleged, on information and belief, that Jenkins executed two notes in the sum of $750 each to King as part payment of the purchase price of the property, and denied that Jenkins was acting as the undisclosed agent of the defendant Owen, or that he concealed his identity in the transaction. He alleged that Owen had no connection with Jenkins, or interest in the transaction between the plaintiff and the defendant Jenkins. He specially denied that Jenkins executed the notes as his agent or was acting as his agent in the transaction. He denied the conspiracy and affirmatively alleged that, after Jenkins purchased the property, the defendant Owen and defendant Jenkins engaged in the implement business at Keyes as partners, which partnership continued until about July 31, 1931, at which time Jenkins and Owen entered into a written contract, by the terms of which Jenkins sold and transferred all his interest in the O. K. Implement Company to the defendant Owen; that the agreement was wholly in writing; and that he (Owen), did not assume the payment of the notes, or had bound himself in any manner to pay such debt owing by Jenkins to plaintiff. The answer was verified by Owen. There was a cross-action, which was abandoned by failure to submit the issues to the jury.

King filed his first supplemental petition, consisting of general demurrer, general denial, and the case proceeded to trial.

At the conclusion of the evidence, plaintiff and his attorney elected to hold the defendant G. C. Owen as the undisclosed principal, and waived any right of action that he might have had against the defendant Jenkins.

The court submitted the following issues to the jury:

"(a) Did the defendant, J. W. Jenkins, purchase the one-half interest in the O. K. Implement Company which belonged to the plaintiff, Carl King, for the defendant, G. C. Owen?" This was answered in the affirmative.

"If you answer subdivision (a) above in the negative, then you need not answer the subdivisions below; but if you answer (a) in the affirmative, then answer:

"(b) Did said Carl King and Benton King, or either of them, at the time said purchase of said interest was so made, know it was, if it was, so made for said G. C. Owen?" This was answered in the negative.

"If you answer subdivision (b) above in the affirmative, then you need not answer subdivision (c) below; but if you answer (b) in the negative, then answer:

"(c) When, after said purchase of said interest was so made, did Carl King and Benton King, or either of them, first learn that said purchase was, if it was, so made for said G. C. Owen?" This was answered "December, 1933."

"(d) Did said G. C. Owen actively conceal from Carl King and Benton King that said purchase of said interest was, if it was, so made for said G. C. Owen?" This was answered in the affirmative.

"(e) Did said Carl King and Benton King exercise ordinary care to discover that said purchase of said interest was, if it was, so made for said G. C. Owen?" This was answered in the affirmative.

Based upon the verdict, the court entered judgment dismissing Jenkins and decreeing a recovery in favor of King and against Owen for $1,380 principal, $499.89 accrued interest, and $187.98 attorney's fees, aggregating $2,067.87, together with interest thereon from the date of the judgment at the rate of 10 per cent., and for all costs of suit. The judgment also foreclosed an attachment lien upon certain real estate owned by Owen situated in Potter county, Tex.

By the first two propositions the appellant insists that the court erred in not peremptorily instructing the jury to return a verdict in his favor and in entering judgment against him for the amount of the principal, interest, and attorney's fees of the notes sued on when his name did not appear thereon as a maker, indorser, or otherwise, and further that it was error to render judgment against him as an undisclosed principal where the evidence showed that the seller relied upon the credit of the alleged agent and took his personal promissory note for the balance of the purchase price of the property, and especially where the alleged undisclosed principal's name did not appear on the notes.

■ It cannot be insisted that the judgment, when fairly interpreted, is based upon the notes. It recites that King is entitled to a judgment against Owen "for the unpaid balance of the agreed purchase price of plaintiff's one-half interest in the O. K. Implement Company," and the further recitals in the judgment show that it was rendered for the balance of the consideration due King for his half interest in the business. The suit against Jenkins was based upon the notes, but, when plaintiff took a nonsuit as to him, the only cause of action remaining was against Owen upon his alleged liability as an undisclosed principal. This is clearly and fully set out in the alternative count of plaintiff's petition quoted in full above. The judge submitted no issues relative to the notes signed by Jenkins alone, but properly confined the issues to the cause of action against Owen as the undisclosed principal of Jenkins, so the first and second propositions are foreign to the case presented.

■ As a general rule, where property is purchased by an agent acting for an undisclosed principal, such principal may be held liable on the principle that he who accepts the benefits must bear the burdens of the transaction. Warburton v. Wilkinson (Tex. Civ. App.) 182 S. W. 711; Goldschmidt & Co. v. Wagner (Tex. Civ. App.) 99 S. W. 737.

■ As said in 2 Tex. Jur. 487, § 89: "The principle is well established that if one without authority assumes to act as agent, or if an agent exceeds his proper authority, the principal knowingly receiving and retaining the benefit of the transaction will be held liable. This principle is founded on estoppel."

For a stronger reason, when Owen entered into an agreement with Jenkins to purchase the property for him, as found by the jury, the rule applies.

In Sanger v. Warren, 91 Tex. 472, 44 S. W. 477, 66 Am. St. Rep. 913, it is said it has long been settled to be a general rule of law that, if A contracts with B, supposing him to be acting on his own behalf, but afterwards discovers that he was acting for C, A can thereupon elect to hold C upon the contract; and it is further held that this is true, although the other contracting party may have recourse against the agent. Dallam County v. S. H. Supply Co. (Tex. Civ. App.) 176 S. W. 798, 803; 2 Tex. Jur. 558, § 154. We quote from the Dallam County Case, supra: "When credit is given to an agent acting for his principal, who does not disclose his agency at the time he contracts the debt, and the creditor afterwards discovers the agency, the creditor may hold the principal liable for the debt; and the fact that things sold are charged up against the agent only does not affect the case. Strauss v. Jones' Executors, 37 Tex. 313; Sanger v. Warren, 91 Tex 472, 44 S. W. 477, 66 Am. St. Rep. 913; Sessums v. Henry, 38 Tex. 37; Heffron v. Pollard, 73 Tex. [96], 100, 11 S. W. 165, 15 Am. St. Rep. 764. An agent who contracts in behalf of an undisclosed principal may be held liable by the person with whom he deals, as though he himself were, in fact, the principal. The liability of the agent is not, however, exclusive, for, although the third person extended credit to the agent in ignorance of the fact that the latter was acting in a representative capacity, he may hold the undisclosed principal when discovered; it being a firmly established rule that an undisclosed principal is bound by executory simple contracts made by the agent. Especially is this true when the principal accepts benefits under the contract of the agent with third persons."

■ We deem it unnecessary to enter into a more extended discussion of a principle which is firmly established in the jurisprudence of the state, and cite New Fenfield Townsite Co. v. King (Tex. Civ. App.) 204 S. W. 788; Meacham on Agency (2d Ed.) §§ 1736 and 1749. After a discussion at considerable length of the rule, the author states the general con-

clusion from the cases previously discussed (page 1331): "If a principal sends an agent to buy goods for him, and on his account, it is not unreasonable that he should see that they are paid for. Although the seller may consider the agent to be the principal, the actual principal knows better. He can easily protect himself by insisting upon evidence that the goods have been paid for, or that the seller, with full knowledge of the facts, has elected to rely upon the responsibility of the agent, and if he does not, but, except where misled by some action of the seller, voluntarily pays the agent without knowing that he has paid the seller, there is no hardship in requiring him to pay again. If the other party has the right, within a reasonable time, to charge the undisclosed principal upon his discovery—and this right seems to be abundantly settled in the law of agency—it is difficult to see how this right of the other party can be defeated while he is not himself in fault by dealings between the principal and the agent of which he had no knowledge and to which he was not a party."

In the following cases the author announces the rule that the seller may sue both the agent and the undisclosed principal, and at his option may, before judgment, elect to hold the undisclosed principal liable by taking a nonsuit as against the agent. Snow v. Rudolph, 62 Tex. Civ. App. 235, 131 S. W. 249; Kempner v. Dillard, 100 Tex. 505, 101 S. W. 437, 123 Am. St. Rep. 822; Salopek v. Logan (Tex. Civ. App.) 256 S. W. 299; Hudgins Produce Co. v. J. R. Beggs & Co. (Tex. Civ. App.) 185 S. W. 339; Diacomis v. Wright (Tex. Com. App.) 34 S.W.(2d) 806.

In 2 C. J. 840, § 522, it is said: "As has been seen in another connection, an agent who enters into contractual relations on behalf of an undisclosed principal may be held liable by the person with whom he deals as though he himself were in fact the principal. The liability of the agent is not, however, exclusive for although the third person extended credit to the agent, in ignorance of the fact that the latter was acting in a representative capacity, he may elect to hold the undisclosed principal, when discovered, it being a firmly established rule that an undisclosed principal is bound by executory, simple contracts made by the agent, and by acts done by the agent in relation thereto within the scope of his authority and in the course of his employment, although the contract purports to be the individual contract of the agent."

In 8 C. J. p. 158, note 78(c), it is said: "The principal is liable for goods purchased for him by his authorized agent for which a promissory note is given, although he does not authorize the note"— citing numerous cases from Massachusetts, New York, and Ohio. The author in the text, however, says that, where a note has been given, the principal is not liable on the paper, notwithstanding the agent acted by authority, although he may be bound by ratification. Paul v. Berry, 78 Ill. 158; Walter v. School Trustees, 12 Ill. 63; First Nat'l Bank v. Gay, 63 Mo. 33, 21 Am. Rep. 430; Dow's Ex'r v. Spenny's Ex'r, 29 Mo. 386.

■■ Plaintiff in this case alleges ratification and estoppel by reason of the fact that Owen accepted the goods from Jenkins and compensated Jenkins for his services as agent. The right to sue an undisclosed principal who has obtained the benefits of the transaction, in which the agent gave his note, is stated in 8 C. J. 168, as follows: "Where the undisclosed principal has obtained the benefits of the transaction in which the note was given by the agent, which in equity he ought not to retain, the third person may reject the note and recover from the principal on the common law counts, or upon the original consideration for the contract."

This rule is supported by numerous authorities, including cases by the Supreme Court of the United States.

■ As we understand the record, this is not a suit based upon fraud. The allegations of fraud, conspiracy and concealment were made in explanation of, and as an excuse for, the delay in filing this suit. Where plaintiff alleges facts which, if true, are sufficient to show the defendant is not entitled to rely upon limitation as a defense, the issue cannot be raised by a special exception, but defendant must allege and prove the facts which would entitle him to a judgment upon that ground. Steele v. Glenn (Tex. Civ. App.) 57 S.W.(2d) 908. Appellant excepted to the petition because it showed that plaintiff's suit was barred by limitation when the petition was filed, but did not plead limitation as a defense.

Moreover, the facts pleaded by appellee relative to the sale and purchase of King's one-half interest in the business, the ac-

tive concealment of the cause of action, the identity of the real purchaser, and the justifiable failure of appellee to discover the facts, together with the proof thereof by a preponderance of the evidence to the satisfaction of the jury, are all conclusive in appellee's favor upon the issue of limitation.

 It is next contended that the court erred in admitting, over the defendant's objection, testimony varying the terms of the written contract entered into between G. C. Owen and J. W. Jenkins. The appellee alleged that Jenkins purchased King's half interest at the instance and request of defendant Owen, and for the latter's benefit, and that after such purchase the defendant Owen took charge of the business and hired Jenkins to work, and that a partnership relation did not exist between the defendant Jenkins and Owen. In his answer Owen denied that Jenkins was his agent or that he had purchased plaintiff's interest in the property for Owen's benefit, and specifically alleged that, after the defendant Jenkins purchased the property from the plaintiff, the defendant and Jenkins engaged in the implement business at Keyes as partners, under the name of O. K. Implement Company, which partnership existed until July, 1931, when J. W. Jenkins, one of the defendants, and Owen entered into a written contract and agreement, by the terms of which Jenkins sold and transferred his interest to Owen.

King filed no verified denial of the allegation of partnership. During the trial the court permitted Jenkins to testify, over appellant's objection, relative to the conversation between the defendants as to what interest Jenkins would have in the business, and to detail at some length the conversation between them with reference to their partnership or other relations. The appellant contends that what was said by Jenkins and Owen at the time the written agreement was entered into was inadmissible because it violated the parol evidence rule, and they further insist that, if the relation between Owen and Jenkins was that of principal and agent at the time of the purchase and sale, then the property would vest in Owen, but, if their relationship subsequent to the sale was that of partners, the ownership would not be solely in Owen and therefore, if the allegations of the defendant's answer, to the effect that a partnership existed, are

taken as confessed, then the plaintiff must fail in his cause of action, and judgment should have been instructed against him; that, in the absence of a verified denial of the partnership alleged by Owen, such allegation must be taken as confessed, and it was error for the trial court to admit testimony contradicting such allegation.

It occurs to us that this contention is immaterial, for the reason that Jenkins could have been Owen's special agent to purchase King's interest, and at the same time Owen's business partner, but the record does not show that Jenkins and Owen had formed a partnership prior to the time Jenkins acquired King's one-half interest. Even though it be admitted that a partnership was afterwards formed, it does not tend to contradict the appellee's contention that Jenkins was Owen's agent in consummating the deal with King. The written agreement made between Owen and Jenkins could not be varied or contradicted under the parol evidence rule by evidence of contemporaneous verbal agreements between the parties to the contract, but it is elemental law that the parol evidence rule does not operate against strangers to the instrument unless such strangers could be classed as privies. King was in no sense privy to the partnership agreement entered into between Jenkins and Owen. The rule is binding only upon persons who claim rights or benefits under the instrument, or who base their action upon it, even though they are not parties thereto, and appellee did not base his action thereon. 17 Tex. Jur. 803, § 359.

The appellant's allegation is that some time after the purchase he and Jenkins engaged in the implement business as partners. This fact was, it seems, not established to the satisfaction of the jury, and, if its truth be admitted, it would not bar appellee's right to a judgment against appellant as an undisclosed principal. Appellee did not sue the defendants as partners, nor did the defendants seek any relief by cross-action against appellee. It is said in 32 Tex. Jur. 398: "But the decisions hold that there are some allegations of partnership which need not be so denied. The statute does not apply to an allegation of partnership between third persons who neither sue nor are sued * * * nor does the act apply where persons are sued as individuals independent of partnership * * * nor where

they are sued as joint obligors and admittedly are liable. An allegation of partnership made descriptively of concerted acts, but not as a predicate of any claim of liability as partners need not be denied under oath to avoid an admission of partnership. Hence, where one is alleged to have been a partner in a fraud, the word 'partner' being used in the sense of co-party or conspirator, a sworn denial is not necessary."

The recent case of Davisson v. Eastland County (Tex. Civ. App.) 6 S.W.(2d) 782, from which, for the sake of brevity, we will not quote, clearly announces the rule which governs in cases of this character. See, also, Rushing v. Spreen (Tex. Civ. App.) 142 S. W. 49; Markowitz v. Davidson (Tex. Civ. App.) 228 S. W. 968.

Appellant was not bound by the recitations in either the contract or bill of sale which Jenkins made to appellant on July 22, 1931, to the effect that appellant and Jenkins had been partners. As stated, he was not a party to either instrument, had no actual or constructive knowledge thereof. The appellee had alleged fraudulent concealment. The instruments appeared to be a part of their fraudulent proceeding.

█ The record shows that Jenkins testified that Owen, as a part of the transaction between them, assumed to pay the notes, and this is made the ground of the nineteenth assignment of error. The record discloses that, by a written supplemental charge, the court, at the special request of appellant, withdrew all testimony elicited during the trial from the witness Jenkins to the effect that the appellant agreed to assume the payment of said notes, and instructed the jury to disregard all such testimony.

█ The appellant insists that the cause of action against him is barred by the two-year statute of limitation. Moore, Justice, said in Munson v. Hallowell, 26 Tex. 475, 481, 84 Am. Dec. 582: "That courts of equity in England and America have universally and uniformly held, that the statute [of limitation] did not protect a defendant who had fraudulently concealed the plaintiff's cause of action, has never been questioned." Further on in the opinion Justice Moore declares that the rule obtains in courts of law, and particularly in Texas, where the distinction between law and equity jurisdiction has been abolished. To the same effect is

Steele v. Glenn, supra. Numerous cases are referred to as supporting the rule in 17 R. C. L. 853, § 214, 856, § 217; 37 C. J. 969, § 350; 20 Tex. Jur. pp. 112–114. As we understand the record, the plea of limitation has not been sustained.

█ The next contention to be disposed of is that the court erred in rendering judgment for the amount of the note, principal, interest, attorney's fees, and for 10 per cent. interest additional upon the attorney's fees. In 1 Daniel on Negotiable Instruments (6th Ed.) p. 393, the author says: "An undisclosed principal, as we have seen, cannot be held as a party to a bill or note. But there is a principle of the law of principal and agent important to be remembered in this connection; that when an agent acts without disclosing that he is an agent, or when acting as a known agent does not disclose the name of his principal, then, although credit is given to the agent, it is not an exclusive credit. And when the principal is discovered, he may be held for the debt, provided that nothing has in the meantime passed between the principal and agent to alter the state of their accounts or otherwise to operate injuriously to the principal if he has acted in the confidence that exclusive credit was given to the agent; and provided also that there was no laches on the part of the creditor." Wharton on Evidence, §§ 950, 951; Storey on Agency (9th Ed.) §§ 291, 292; Harper v. Tiffin Nat'l Bank, 54 Ohio St. 425, 44 N. E. 97; Lovell v. Williams, 125 Mass. 439; Hypes v. Griffin, 89 Ill. 134, 31 Am. Rep. 71. The right of the creditor to sue the undisclosed principal by an independent action and recover the full amount of the debt is held in Adams v. First Nat. Bank (Tex. Civ. App.) 178 S. W. 993. The evidence sustains the finding that Jenkins did not purchase King's half interest in the business for himself, but for Owen, and, according to the testimony of Jenkins, the purchase was made in the manner and for the sum directed by Owen. Jenkins further testified that Owen assumed to pay the indebtedness and hold him harmless. Owen paid the first $1,500, and at his request the two notes for $750 each were made by Jenkins and for the benefit of Owen, who later took over the property in pursuance of their prior agreement. The testimony in the record with reference to this phase of the case shows that Jenkins and Owen both understood that the notes simply evidenced the amount of the debt

remaining unpaid, and, while King could not recover against Owen directly upon the notes, under the authorities cited above they were the measure of King's recovery against Owen for whose benefit the notes were made. Ratification by Owen and estoppel were pleaded and established by a preponderance of the evidence.

Benton King, who represented appellee in the transaction, testified that Owen said $3,000 for Carl King's half interest in the business was satisfactory, and in the conversation said that Jenkins would pay $1,500 cash and would give notes for the remaining $1,500, to bear interest at 10 per cent. and provide for 10 per cent. attorney's fees; that the notes represented the true agreement as to what the balance of the purchase price amounted to. Jenkins testified that the $3,000 was to be paid, $1,500 in cash and $1,500 secured by notes, one due August 1, 1931, and the other due January 1, 1932. The notes were to bear interest at 10 per cent. and provide for 10 per cent. attorney's fees, and that he agreed to pay in accordance with the terms of the notes. Owen testified that at the time King sold out there were no other bills except one due the International Harvester Company, and that, when he turned over the bill of sale, the understanding was he was to get $3,000, to be paid by canceling his note held by Owen in the sum of $1,155.50 with interest—that is, $1,155.50 was to come out of the $3,000 total consideration—that there was a check for $287; that the remaining $1,500 was to be paid in two installments of $750 each, to bear 10 per cent. interest. He was asked; "And you knew if it wasn't paid they wanted attorney's fees paid on it?" Answer: "I imagine so. Most all of them are that way."

 We think the court correctly rendered judgment for the debt as represented and evidenced by the two notes. When the provision in a note in respect to fees is for a liquidated amount, and is clearly incidental to the main debt, and so connected therewith as to make it a part of the contract, the judgment should bear the same rate of interest as is specified in the contract. Washington v. First Nat'l Bank, 64 Tex. 4; Manes v. J. I. Case Threshing Machine Co. (Tex. Civ. App.) 295 S. W. 281; Carver v. J. S. Mayfield Lumber Co., 29 Tex. Civ. App. 434, 68 S. W. 711. This being the rule, the judgment was properly rendered for the debt with 10 per cent. interest from the date of the judgment, and, since the attorney's fees were a part of and incorporated in the judgment, together with the principal and interest, we think the court correctly held that the 10 per cent. rate should apply to each item of the judgment. Tsesmelis v. Sinton State Bank (Tex. Com. App.) 53 S.W.(2d) 461, 85 A. L. R. 319.

 By several assignments, the appellant attacks the special issues submitted by the court upon numerous grounds. The rule requires objections to the issues to specifically point out the defects or omissions, if any. Most of the objections fail to do so. We deem it unnecessary to consider more than one of the objections, which is made to each of the issues, and is as follows: "Because said issue is a comment upon the weight of the evidence and assumes that the purchase of said property was made by G. C. Owen and by the language used in said special issue the jury is made to believe, or might be made to believe, that the court assumes and believes that G. C. Owen did in fact become the purchaser of such property."

The jury answered the first issue, inquiring whether Jenkins purchased King's half interest for the defendant Owen, in the affirmative. Following each of the issues the court instructed the jury that, if the preceding issue is answered in a certain way, then they should or should not answer the following one. The second issue is: "Did Carl King or Benton King, or either of them, at the time said purchase of said interest was so made, know it was, if it was, so made for said G. C. Owen?" Special issue (c) inquires: "When, if said purchase of said interest was so made, did Carl King and Benton King, or either of them, first learn that said purchase was, if it was, so made for said G. C. Owen?"

In the absence of the previous instructions given to the jury, it might be contended that the court assumed in issues (b), (c), and (d) that the purchase was made for Owen, but the charge must be considered as a whole, and, if the jury had found that the purchase was not made for Owen, they would not have answered the subsequent issues.

These same objections have been made in numerous cases to issues upon the ground that they were upon the weight of

the evidence and assumed the existence of certain facts, and the courts have uniformly held them to be correct. McClung Constr. Co. v. Muncy (Tex. Civ. App.) 65 S.W.(2d) 786; Proctor v. Cisco & N. E. Ry. Co. (Tex. Com. App.) 277 S. W. 1047; Davis v. Christensen (Tex. Civ. App.) 247 S. W. 303; G., H. & S. A. Ry. Co. v. Harris Bros. (Tex. Civ. App.) 211 S. W. 255.

We find no reversible error, and the judgment is affirmed.